# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4192

_____

Deborah L. Schoffstall,             *
                                        *

                 Appellant,     *
                                        *   Appeal from the United States
           v.                *   District Court for the
                                        *   District of North Dakota.

William Henderson, Agent;    *
U.S. Postal Service,          *
                                        *

               Appellees.     *

_____

Submitted:  June 13, 2000

Filed:  August 18, 2000

_____

Before HANSEN and HEANEY, Circuit Judges, and MILLS[1], District Judge.

_____

HEANEY, Circuit Judge.

_____

[1]The Honorable Richard Mills, United States District Judge, for the Central District of Illinois, sitting by designation.

Deborah Schoffstall sued the United States Postal Service (USPS) for sex discrimination, retaliation, and sexual harassment.[2] She moved for protective relief to prevent the USPS from discovering certain information. The district court denied her motion, and later dismissed three of her claims as a discovery sanction. The district court also granted summary judgment on her remaining claims and denied her motion for reconsideration. We affirm.

## BACKGROUND

Schoffstall has worked since 1984 as a mail distribution clerk at the USPS plant in Bismarck, North Dakota. In 1990, she was diagnosed with a back injury that she alleged occurred while on the job. Schoffstall's supervisor accommodated her injury, and following a fitness-for-duty examination late that year, restricted her work duties. Because Schoffstall alleged a work-related injury, she believed she qualified for limited-duty status, a status more favorable than the light-duty status given to employees whose injuries occur outside of work.

The USPS was realigned in 1992. Bismarck moved into the Dakota District, and David Morton became Schoffstall's supervisor. In August 1993, Morton sent a letter to postal employees instructing them to update their light-duty documentation. Morton asked Schoffstall to review her records and to apply for light duty, stating that he could no longer accommodate her work restrictions without a light-duty request. Schoffstall signed the request under protest that she qualified for limited-duty status.

_____

[2]Schoffstall also individually sued her supervisor, David Morton. The district court dismissed Schoffstall's claims against Morton because supervisors may not be held individually liable under Title VII. See Spencer v. Ripley County State Bank, 123 F.3d 690 (8th Cir. 1997).

2

Schoffstall alleges that over the next couple of years, Morton increasingly scrutinized her; stationed himself directly by her; intimidated her; spread rumors about her; made derogatory comments about her; and physically threatened her. She complained to him that her work environment had become hostile and told him that if he did not correct the problem, she would file an EEOC complaint. Two weeks later, on May 22, 1995, Morton asked Schoffstall to submit to another fitness-for-duty examination. Dr. Melissa Ray evaluated Schoffstall and concluded that in addition to her current work restrictions, she should not repetitively lift above her shoulders.

Upon receiving Ray's report, Morton conferred with the USPS's injury-compensation specialist and a USPS nurse to discuss Schoffstall's new work restriction. The nurse recommended that Schoffstall not be permitted to work unless her restrictions could be accommodated. In accordance with this recommendation, Morton prohibited Schoffstall from working for approximately three days so the nurse could clarify with Ray the additional work restriction. Schoffstall was given administrative leave for the time missed.

Morton also removed Schoffstall from the desired overtime list because according to Morton, her work was restricted to eight hours a day, forty hours a week. Schoffstall filed a union grievance on September 27, 1995 to contest her removal from the overtime list. During the grievance process, Morton admitted error, and Schoffstall's name was returned to the list. She received $400 in settlement.

Schoffstall officially filed an EEOC complaint against Morton on October 8, 1995. The next February, Morton requested that Schoffstall and a male employee update their light-duty documentation by 5:00 p.m. on February 21, 1996. Both Schoffstall and the male employee turned their requests in late, and both were prohibited from working their next scheduled shift. Schoffstall took eight hours of sick leave for the time missed.

3

In April 1998, Schoffstall sued the USPS. Although her claims are difficult to decipher and interspersed with allegations of extreme emotional distress, they apparently boil down to sex discrimination, retaliation, and sexual harassment.

As part of discovery, the USPS requested that Schoffstall provide signed medical releases for any doctors, psychologists, psychiatrists, and counselors she had seen since 1970. When USPS's counsel had not received the releases by February 5, 1999, he sent a letter to Schoffstall's counsel requesting the releases. Hearing nothing in response, he followed up with an additional letter on February 11, 1999.

On March 3, 1999, Schoffstall sent the releases to the USPS, but she limited the scope of those for Alison Krumm, a counselor with the Spirit of Life Church (SLC) and for Val Wangler, a counselor with Archway Mental Health Services (AMHS). Finding the limitations unacceptable, USPS's counsel asked Schoffstall to reexecute the releases as requested. Schoffstall did not respond.

On April 26, 1999, the USPS filed a motion to compel pursuant to Federal Rule of Civil Procedure 37. Schoffstall filed a cross-motion for protective relief to preclude the USPS from discovering certain information from Krumm and Wangler. On May 14, 1999, the district court granted USPS's motion, and denied Schoffstall's cross-motion. Pursuant to the district court's order, USPS sent another letter requesting the releases. Schoffstall moved for reconsideration, which the district court denied on June 6, 1999. Schoffstall signed the releases during a June 22, 1999 discovery conference.

Counsel for the USPS sent the releases to the SLC and to AMHS. In response, he received a letter from the SLC's lawyer, refusing to provide the requested information based on recent instructions from Schoffstall. A similar letter from AMHS's attorney followed.

4

On July 21, 1999, USPS's counsel sent Schoffstall's counsel a letter informing her that unless Schoffstall withdrew her instructions to the SLC and AMHS by July 26, 1999, he would move to dismiss her claims based on her willful failure to comply with the court's order. When Schoffstall did not respond, the USPS moved for discovery sanctions. The district court granted the motion and dismissed with prejudice Schoffstall's first, sixth, and eighth claims for relief, all claims that essentially alleged emotional distress. The USPS also moved for summary judgment, which the district court granted on the remaining claims. Schoffstall's motion for reconsideration was denied.

## DISCUSSION

### I. Denial of Protective Relief

Schoffstall first appeals the district court's denial of her motion for protective relief. She argues that the district court erred because the USPS's discovery request was made merely to annoy, embarrass and harass her; her medical records would not be kept confidential; and the request sought privileged information.

We review the district court's discovery decisions for an abuse of discretion. See Williams v. Mensey, 785 F.2d 631, 636 (8th Cir. 1986); Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 280 (8th Cir. 1995). "Our review is very deferential, and generally we will not interfere with the great latitude exercised by the district court in discovery matters." Sylla-Sawdon, 47 F.3d at 280.

Parties may discover any relevant, unprivileged information that is admissible at trial or is reasonably calculated to lead to admissible evidence. See Fed. R. Civ. P. 26(b)(1). However, the court may issue a protective order to prevent discovery where "justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c).

5

Schoffstall first argues that the USPS's discovery requests were intended to harass, embarrass or annoy her. We cannot agree. Schoffstall failed to present any evidence that the USPS requests were made in this vein. Further, her claims against the USPS placed her medical condition at issue, making the information sought by the USPS relevant, and absent a showing of bad faith, discoverable.

Schoffstall also contends that protective relief should have been ordered because the information would not be kept confidential. She alleges that Morton disclosed to her coworkers information regarding her medical record and deposition statements. The district court may in appropriate cases seal documents or deposition testimony to ensure that they will be used only for judicial purposes and will not be disseminated. See id. We are not persuaded that the district court abused its discretion by declining to seal this information and by denying protective relief.

Lastly, Schoffstall claims the information sought from Krumm and Wangler is protected from discovery by psychotherapist-patient privilege. The USPS counters that the information is discoverable because Schoffstall has placed her medical condition at issue. The Supreme Court has recognized the psychotherapist-patient privilege in federal question cases, see Jaffee v. Redmond, 518 U.S. 1, 15 (1996), but has not addressed whether the privilege is waived by a plaintiff who places his or her medical condition at issue. Numerous courts since Jaffee have concluded that, similar to attorney-client privilege that can be waived when the client places the attorney's representation at issue, a plaintiff waives the psychotherapist-patient privilege by placing his or her medical condition at issue. See Sarko v. Penn-Del Directory Co., 170 F.R.D. 127, 130 (E.D. Pa. 1997); Vann v. Lone Star Steakhouse & Saloon, Inc., 967 F. Supp. 346, 349-50 (C.D. Ill. 1997); EEOC v. Danka Indus., Inc., 990 F. Supp. 1138, 1142 (E.D. Mo. 1997); Jackson v. Chubb Corp., 193 F.R.D. 216, 225 (D. N.J. 2000); but see Vanderbilt v. Town of Chilmark, 174 F.R.D. 225, 225-30 (D. Mass. 1997) (declining to find waiver where plaintiff sought emotional distress damages).

6

Finding these cases persuasive, we agree that by placing her medical condition at issue, Schoffstall waived the psychotherapist-patient privilege.

## II.    Discovery Sanctions

Although we review the district court's discovery decisions for an abuse of discretion, we more closely scrutinize dismissal imposed as a discovery sanction because "'[t]he opportunity to be heard is a litigant's most precious right and should sparingly be denied.'" Chrysler Corp. v. Carey, 186 F.3d 1016, 1020 (8th Cir. 1999) (citing Edgar v. Slaughter, 548 F.2d 770, 773 (8th Cir. 1977)).

Federal Rule of Civil Procedure 37(b)(2)(C) authorizes the court to impose sanctions upon parties who fail to comply with discovery orders, but dismissal may be considered as a sanction only if there is (1) an order compelling discovery, (2) a willful violation of that order, and (3) prejudice to the other party. See Carey, 186 F.3d at 1019; Boogaerts v. Bank of Bradley, 961 F.2d 765, 768 (8th Cir. 1992) (per curiam) (noting district court does not abuse discretion by dismissing claim as discovery sanction if discovery abuse was in bad faith, deliberately intentional, or willful).

The district court's June 6, 1999 order directed Schoffstall to execute the SLC and AMHS releases. This directive followed months of stalling and haggling by Schoffstall over the extent of the information to be discovered. She finally executed the releases during the district court's June 22, 1999 discovery conference.

The USPS forwarded the releases to the SLC and to AMHS, ending the matter or so it thought. Within weeks, rather than receiving the information authorized by Schoffstall's written release, the USPS received letters from the attorneys for both the SLC and AMHS. The SLC's letter stated that "[p]ursuant to instructions from the litigant, we hereby claim on the litigant's behalf that any records of Ms. Schoffstall in

7

the possession of Spirit of Life Church are privileged from disclosure by virtue of religious privilege." (J.A. at 634.) AMHS's letter similarly refused to provide the requested information because Schoffstall "modified and restricted the scope of the Authorization forwarded by [USPS counsel's] office." (J.A. at 635.) To make matters worse, Schoffstall attempted to conceal her role. In her letter to AMHS, Schoffstall stated that "[t]his letter and the previous letter to Val Wangler (June 1999) are not to be included with [the released information]." (J.A. at 637.) We suspect that Schoffstall intended AMHS to provide only the limited amount of information authorized in her letter, without reference to the letter or to the existence of additional information, requested by the USPS but not provided. Her plan was revealed when AMHS's counsel attached Schoffstall's letter to that he sent to the USPS.

After receiving these refusals, USPS's counsel demanded that Schoffstall withdraw her instructions to the SLC and AMHS. He threatened to move for dismissal of her case for willful failure to comply with the discovery order if she failed to do so within five days. Again she did not comply. Schoffstall's stalling and her deceitful tactics show a blatant disregard for the district court's order and sufficiently demonstrate that her actions were willful.

Moreover, her actions prejudiced the USPS. The final pretrial conference was scheduled for September 8, 1999, with trial set for October 6, 1999. The discovery disputes that led to the USPS's motion to compel required the district court to extend the discovery deadline to July 20, 1999. The extension limited the time both parties had to prepare for trial, but rather than being able to focus on completing discovery and beginning trial preparations, Schoffstall's actions required the USPS to spend its time hounding her for releases the court had already ordered her to provide. In fact, she delayed so long that when the USPS ultimately moved for sanctions, it was July 28, 1999, eight days after the discovery deadline.

8

Because Schoffstall willfully and prejudicially violated the district court's discovery order, we affirm the dismissal of her first, sixth, and eighth claims.

## III.    Summary Judgment

Schoffstall next appeals the district court's decision to grant summary judgment on her sex discrimination, retaliation, and sexual harassment claims.  The district court granted summary judgment after concluding that Schoffstall failed to present evidence that she suffered any adverse employment action or that Morton's actions were motivated by her sex.

We review de novo the district court's decision to grant of summary judgment. See Scusa v. Nestle U.S.A. Co., Inc., 181 F.3d 958, 964 (8th Cir. 1999).  Summary judgment is appropriate where the movant has shown that no genuine issue of material fact exists, and that he or she is entitled to judgment as a matter of law.  See id.; Fed R. Civ. P. 56(c).   When considering the appropriateness of summary judgment, we view the evidence in the light most favorable to the nonmoving party.  See Scusa, 181 F.3d at 964.

## A.    Sex Discrimination

Schoffstall claims that the USPS violated Title VII by discriminating against her based on her sex.  Because Schoffstall's claim is based on indirect evidence of discrimination, the familiar McDonnell Douglas burden-shifting analysis applies.  See Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973)).

This analysis first requires the plaintiff to establish a prima facie case of sex discrimination, thus demonstrating that he or she (1) is a member of a protected class;

9

(2) was qualified to perform her job; (3) suffered an adverse employment action; and (4) was treated differently that similarly-situated persons of the opposite sex. See id. at 1156.

It is undisputed that Schoffstall is a member of a protected class and that she was qualified to perform her job. The question is, however, whether Schoffstall has shown any adverse employment action and that similarly-situated males were treated differently.

Schoffstall contends that being placed on light, rather than limited, duty status was an adverse employment action because the medical verifications and the accommodations differ between the two. Schoffstall argues that light-duty employees must more fully document their injuries. Requiring compete documentation of an injury the employer is accommodating is not, in our view, an adverse employment action.

She also claims that the level of accommodation varies for limited and light-duty status. She notes that limited-duty employees cannot be forced to work overtime, while light-duty employees can. However, Morton removed Schoffstall's name from the overtime list, thus preventing her from being considered for overtime work. She immediately filed a union grievance to have her name reinstated. Because Schoffstall wanted to be considered for overtime work, we cannot conclude that her failure to receive the limited-duty accommodation was adverse. Moreover, Schoffstall is still employed by the USPS as a mail distribution clerk. She has not been demoted. Her salary has not been reduced. Her job duties and benefits have remained unchanged, and the USPS continues to accommodate her injury. Thus, her placement on light-duty status was not an adverse employment action.

We also are unable to conclude that Schoffstall suffered an adverse employment action when the USPS required her to submit to a fitness-for-duty examination in June

1995, prohibited her from working immediately following the examination, and prohibited her from working after she turned in her light-duty request late.

Regarding the June 1995 examination, we note that in <u>Vislisel v. Turnage</u>, 930 F.2d 9 (8th Cir. 1991), we questioned whether requiring a medical examination ever could be an adverse employment action. It is not in this case. USPS regulations permit supervisors to request that an injured employee submit to a fitness-for-duty exam. Because such a request is allowed and because the USPS was accommodating Schoffstall's injury, we cannot conclude that the examination S an exam which yielded an additional work restriction we might add S constituted an adverse employment action.

Second, Morton's decision not to permit Schoffstall to work for the three days following the exam also was not adverse. She was informally suspended for this period so that her new work restriction could be clarified. Regardless of Morton's motivation behind informally suspending Schoffstall, she was given administrative leave for the time off and was not disadvantaged.

Finally, Schoffstall was prohibited from working her next shift when she failed to turn in her light-duty request on time, for which she took eight hours sick leave. We need not decide whether this is an adverse employment action because Schoffstall cannot show that similarly-situated male employees were treated differently. Schoffstall concedes that a male employee who also failed to turn in his light-duty documentation on time also was not allowed to work his next shift.

Because Schoffstall failed to present evidence of an adverse employment action and that similarly-situated male employees were treated differently, the district court correctly granted summary judgment on her sex discrimination claim.

11

**B.      Retaliation**

The district court similarly granted summary judgment on Schoffstall's retaliation claim.  To prove retaliation, a plaintiff must show:  (1) that she engaged in a statutorily-protected activity, (2) that she subsequently suffered an adverse employment action, and (3) a causal connection between the adverse employment action and the protected activity.  See Manning v. Metropolitan Life Ins. Co., 127 F.3d 686, 692 (8th Cir. 1997).

Although Schoffstall engaged in a statutorily protected activity by filing an EEOC complaint, she has, for the reasons stated above, failed to present evidence of an adverse employment action. Without proof of requisite adverse employment action, the retaliation claim must fail. See Scusa, 181 F.3d at 969.  Accordingly, we affirm the district court's summary judgment grant on Schoffstall's retaliation claim.

**C.      Sexual Harassment**

Schoffstall finally argues that the district court erred by granting summary judgment on her sexual harassment claim.  The district court did so on the ground that Schoffstall failed to show that Morton's conduct was motivated by her sex.  We agree.

Schoffstall's sexual harassment claim alleges a hostile work environment, which requires a showing that (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; and (4) the harassment was sufficiently severe or pervasive as to alter a term, condition, or privilege of employment.  See Phillips v. Taco Bell Corp., 156 F.3d 884, 888 n.5 (8th Cir. 1998).  Harassing conduct constitutes sex discrimination where members of one sex are exposed to disadvantageous terms or conditions of employment that members of the other sex are not.  See Montandon v. Farmland Indus., Inc., 116 F.3d 355, 358 (8th Cir. 1997).

12

Schoffstall's allegations of harassment focus on Morton's physically and verbally abusive behavior. She points to situations where he lost his temper, swore at her, intimidated her, pounded on desks, and on one occasion lunged across his desk at her. Although this conduct is abusive and harassing, there is absolutely no evidence it was based on her sex.

None of the conduct alleged by Schoffstall referenced her sex, nor did it contain sexual innuendo. In fact, Schoffstall stated in her EEOC complaint that the motivation behind Morton's actions was his dislike of her and of her position as a union steward. She stated "while union steward, I had numerous confrontations with Mr. Morton . . . [who] did not approve of my position as a union steward, was always belligerent, losing his temper and at times swearing and pounding on the desk." (J.A. at 553-554.) Moreover, she testified that Morton subjected male employees to similar abuse. In one incident, Schoffstall recalled that "Morton started yelling, hollering, shaking his finger in [a male employee's] face, accusing [the employee] of raising his voice . . . . [The male employee] felt threatened." (Schoffstall Dep. of Jan. 23, 1999 at 176.) She also testified that Morton would yell and swear on the workroom floor where both male and female employees were present.

There simply is no evidence that Morton's behavior, however boorish, was motivated by Schoffstall's sex. Hence, the district court correctly granted summary judgment on Schoffstall's sexual harassment claim.

13

## VI.    Motion to Reconsider

Finally, Schoffstall appeals the district court's denial of her motion to reconsider its summary judgment decision.  We review for an abuse of discretion. See Roark v. City of Hazen, 189 F.3d 758, 761 (8th Cir. 1999).

Although the Federal Rules of Civil Procedure do not mention motions to reconsider, we have held that when the motion is made in response to a final order, which is the case here, Rule 59(e) applies.  See Broadway v. Norris, 193 F.3d 987, 989 (8th Cir. 1999).  Under Rule 59(e), we cannot conclude that the district court abused its discretion by denying her motion for reconsideration.  Schoffstall's motion merely restated the arguments she made in opposition to the USPS's summary-judgment motion and provided no additional reasons why summary judgment was inappropriate.

## CONCLUSION

For the foregoing reasons, we affirm.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

14