# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 00-3445/3448/3449/4030, 01-1143

_____

| | | |
|---|---|---|
| Deanna L. Beard, | * | |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Southern |
| Flying J, Inc., | * | District of Iowa. |
| | * | |
| Appellant/Cross-Appellee, | * | |
| | * | |
| and | * | |
| | * | |
| Richard Krout, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 11, 2001

Filed: September 11, 2001

_____

Before LOKEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and TUNHEIM,[1] District Judge.

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

While Deanna Beard was employed at a Flying J restaurant in Davenport, Iowa, her supervisor, Richard Krout, allegedly subjected her to several acts of unwanted sexual contact. After quitting her job, Ms. Beard sued Flying J under Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e through 2000e-17, and under the Iowa Civil Rights Act of 1969, *see* Iowa Code §§ 216.1-216.20, for discriminating against her on the basis of sex by maintaining a hostile work environment and for constructively discharging her. Ms. Beard also sued Mr. Krout under the Iowa Civil Rights Act for creating a hostile work environment and under Iowa common law for assault and for battery.

A jury found for Ms. Beard on her hostile work environment claim against Flying J and on her battery claim against Mr. Krout. The jury returned a verdict for Flying J on the constructive discharge claim, and for Mr. Krout on the assault claim and the hostile work environment claim. Each party then filed post-trial motions that were denied by the district court. The parties now appeal from the judgments, with the exception of the judgments entered in Mr. Krout's favor. We affirm in virtually all respects, but remand the case to the district court for entry of judgment on the original jury verdict in favor of Ms. Beard on her battery claim against Mr. Krout.

I.

Ms. Beard was employed as an assistant manager of Flying J's restaurant in Davenport, Iowa, from 1996 until 1998. In January 1998, Mr. Krout was hired as the general manager of the restaurant. Mr. Krout and Ms. Beard generally worked adjoining shifts but their workday overlapped for approximately an hour. There is no question that Mr. Krout was Ms. Beard's supervisor.

The alleged harassment commenced in April 1998, when, according to Ms. Beard, over a three-week period Mr. Krout frequently brushed his body against her

breasts, once rubbed a pair of cooking tongs across her breasts, and once flicked a pen across her nipples, which Ms. Beard says were erect because she had been in the freezer at the restaurant. Ms. Beard testified that she told Mr. Krout that his behavior was unwelcome and complained about it to several other Flying J employees. Although none of these employees was listed in Flying J's employee handbook as a person to contact in case of sexual harassment, Flying J management nevertheless learned of the complaints.

On May 5, 1998, Michael Snider, Flying J's manager for the division that includes Davenport, arrived to investigate Ms. Beard's allegations. Mr. Krout denied those allegations, but also stated that if he had engaged in such conduct he could not remember doing so. After interviewing Mr. Krout and Ms. Beard, Mr. Snider said that he was unable to determine whom to believe. Mr. Snider therefore prepared a document that warned Mr. Krout that such behavior must cease and also recorded Ms. Beard's satisfaction with this action. Both Mr. Krout and Ms. Beard signed the document.

After the May 5 meeting, Ms. Beard admits that Mr. Krout did not physically harass her again, but she alleged that a few days later he pointed to his groin in her presence and in the presence of a male employee and stated that he would "show them some experience." In the days following the May 5 meeting, furthermore, Ms. Beard learned that Mr. Krout had acted inappropriately toward several of her female co-workers. In particular, Christi Ferring advised Ms. Beard that she had been sexually harassed by Mr. Krout on several occasions and had sent a written complaint about this behavior to Mr. Snider.

Ms. Ferring's complaints caused Mr. Snider to return to Davenport on May 16, 1998. At this time, Mr. Snider interviewed six female employees and Mr. Krout. Five of the six women told him of varying degrees of inappropriate behavior by Mr. Krout, but Mr. Krout denied all of the allegations. Ms. Beard pleaded with Mr. Snider to take

Mr. Krout with him when he left, and Mr. Snider suspended Mr. Krout with pay. Mr. Snider testified at trial that he believed most of the allegations that had been made. Mr. Krout was reinstated after a brief suspension, however, because, according to a memo introduced at trial, Flying J management (including Mr. Snider) concluded that the women had conspired to remove Mr. Krout from his position and that there was no evidence that he had engaged in any misconduct. When Ms. Beard learned that Mr. Krout was to be reinstated, she immediately quit her position.

## II.

Flying J contends that it is entitled to judgment as a matter of law on Ms. Beard's hostile work environment claim because Ms. Beard's proof failed in several important particulars. To establish a submissible case of sex discrimination, Ms. Beard was required to produce evidence that would allow a reasonable jury to conclude that she was a member of a protected group, that she was subjected to unwelcome sexual harassment, that the harassment was based on sex, and that the harassment affected a term, condition, or privilege of her employment. *See Schoffstall v. Henderson*, 223 F.3d 818, 826 (8th Cir. 2000). We evaluate Ms. Beard's claims under Title VII and under the Iowa Civil Rights Act using the same legal principles. *See Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 230 & n.2 (Iowa 1995).

Flying J first maintains that Ms. Beard was not subjected to sexual harassment because she did not demonstrate that Mr. Krout's actions were unwelcome to her. A plaintiff must indicate by her conduct that the harassment was unwelcome, and evidence that she "engaged in behavior similar to that which she claimed was unwelcome or offensive" is evidence that the behavior is not unwelcome. *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 966 (8th Cir. 1999). There was testimony at trial that Ms. Beard had touched a male employee's upper thigh in a sexually suggestive manner and frequently spoke in sexually suggestive terms in the workplace. Ms. Beard, however, denied that she ever touched anyone in a sexual manner, and the jury was of course entitled to believe her testimony. Evidence that Ms. Beard spoke in sexually

suggestive terms, moreover, hardly proves as a matter of law that she would welcome having her breasts touched, particularly in light of the fact that there was evidence that she specifically objected to Mr. Krout's conduct. The jury was thus free to conclude that the sexual attention was unwelcome.

Flying J next contends that the harassment was not based on sex because Mr. Krout harassed male employees by occasionally giving them so-called "titty-twisters" and speaking to them in sexual terms. Because of this, Flying J contends that women were not "exposed to disadvantageous terms or conditions of employment to which [males were] not exposed." *Schoffstall*, 223 F.3d at 826. We observe, first of all, that this conduct is not the same as what occurred to Ms. Beard, partly because it is probably not sexual, and in any case it carries an entirely different cultural and contextual message. A plaintiff in this kind of case need not show, moreover, that only women were subjected to harassment, so long as she shows that women were the primary target of such harassment. *See Quick v. Donaldson Co.*, 90 F.3d 1372, 1378 (8th Cir. 1996). Viewing the evidence in the light most favorable to Ms. Beard, a jury could reasonably find that the vast majority of Mr. Krout's activities of a harassing nature was directed toward female employees, and could thus conclude that the harassment of Ms. Beard was based on sex.

Flying J asserts that the harassment, if any, did not affect a term, condition, or privilege of Ms. Beard's employment. Title VII makes actionable only conduct that is "severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). Ms. Beard's testimony indicated that over a three-week period she had been subjected to numerous incidents in which her breasts had been touched. A reasonable person could find that this was an environment sufficiently hostile to affect Ms. Beard's working conditions. There was also ample evidence before the jury to show that Ms. Beard considered it to be a hostile environment, since she complained about the harassment and testified that she

eventually left her job as a result of it. We therefore hold that Ms. Beard presented sufficient evidence to create a submissible case of sex discrimination.

Flying J also maintains that even if Ms. Beard did make a submissible case of discrimination, it was nevertheless entitled to judgment because it made out an affirmative defense as a matter of law. An employer may establish an affirmative defense to a sexual harassment claim if it can show, among other things, that it exercised reasonable care to prevent sexual harassment and promptly corrected any harassment that did occur. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

Ms. Beard maintained at trial that her original complaint was handled cursorily by Mr. Snider because he interviewed only her and Mr. Krout during the May 5 meeting, failing to interview any of the other female employees, several of whom could have related their own stories of harassment by Mr. Krout. Although Ms. Beard indicated on May 5 that she was satisfied with a warning to Mr. Krout, she made it quite clear to Mr. Snider on May 16 that she was in fact not satisfied, and requested that Mr. Snider remove Mr. Krout from his position. Despite the fact that Mr. Snider believed these new allegations of harassment, Flying J took no further action to correct the harassment, and instead chose to stand on its initial warning. A jury could determine from this evidence that Flying J failed to exercise reasonable care in promptly correcting sexual harassment, and thus conclude that Flying J did not prove its affirmative defense. *See Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th Cir. 2000).

The next objection that Flying J raises to events at trial has to do with the jury's answer to the following interrogatory: "Has Deanna Beard proven the elements of her sexually hostile work environment claim against Flying J *and* Richard Krout" (emphasis added). The jury answered "no" and then assessed no damages against Mr. Krout. When asked in a subsequent interrogatory, however, whether Flying J had proven its

affirmative defense, the jury answered "no" and assessed damages against Flying J. The trial judge, believing that the answers to the interrogatories were inconsistent, sent the jury back for further deliberations. The jury then changed its answer on the hostile work environment question to "yes," finding that Ms. Beard had proven her claim while also finding that Flying J had not proven its affirmative defense.

Flying J contends that the trial judge should not have returned the case to the jury because the answer to the first interrogatory determined that Ms. Beard had not proven her hostile environment claim, a necessary prerequisite to damages. It thus contends that the jury's answer to the affirmative defense question and the award of damages were mere surplusage and that the answers to the interrogatories were not inconsistent and should not have been returned to the jury.

We disagree with Flying J's contention. First, while the verdict form itself did not clearly indicate it, the jury's intent certainly did not seem to have been to find in favor of Flying J. It found that Ms. Beard had not proven her claim against Flying J *and* Mr. Krout, and then refused to award damages against Mr. Krout but did award damages against Flying J. The jury, therefore, may well have answered the first interrogatory "no" to indicate its belief that Ms. Beard had proved her claim against Flying J but not against Mr. Krout. The district court has discretion in a situation such as this to clarify a jury's findings by resubmitting the case to the jury. *See Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 821 (8th Cir. 1998). This discretion exists even when, as here, the district court utilizes a special verdict form as provided for under Fed. R. Civ. P. 49(a), *see Karl v. Burlington Northern R.R. Co.*, 880 F.2d 68, 72-73 (8th Cir. 1989). We decline Flying J's invitation to overrule *Karl*, because we are not at liberty to do so. *See Malone v. Vasquez*, 138 F.3d 711, 718 (8th Cir. 1998), *cert. denied*, 525 U.S. 953 (1998).

Flying J's last argument has to do with the award of punitive damages against it. The jury awarded Ms. Beard $12,500 in compensatory damages and $12,500 in

punitive damages. Punitive damages are allowed under Title VII if the defendant discriminated "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(a)(1), (b)(1).

As we noted earlier, Flying J did nothing to discipline Mr. Krout despite the fact that Mr. Snider testified that he believed the allegations of harassment made against Mr. Krout. Flying J's management, furthermore, stated that Mr. Krout did nothing wrong, and even accused the women of conspiring to remove Mr. Krout, again despite the fact that the manager responsible for investigating the allegations thought that they were credible. A jury could conclude from this evidence that Flying J acted with an evil motive or with reckless indifference to Ms. Beard's rights and thus award punitive damages, *see Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 618-19 (8th Cir. 2000). We therefore affirm the judgment against Flying J in its entirety.

### III.

Ms. Beard contends that she is entitled to a new trial on her claim of constructive discharge based on four rulings that the district court made before and during trial.

Ms. Beard first maintains that the jury received insufficient instruction on the matter of co-worker harassment. The district court instructed the jury that to find for Ms. Beard on her claim of constructive discharge, it must find, in part, that "Flying J made Ms. Beard's working conditions intolerable." Ms. Beard contends that this instruction was defective because it did not inform the jury that it could consider the incidents of harassment testified to by her co-workers at trial in determining whether her working conditions were intolerable. Such evidence is of course relevant to showing the environment in which Ms. Beard was forced to work. *See Howard v. Burns Bros., Inc.*, 149 F.3d 835, 838 (8th Cir. 1998).

A constructive discharge, however, "occurs when an employer deliberately renders *the employee's* working conditions intolerable." *Tatom v. Georgia-Pacific*

*Corp.*, 228 F.3d 926, 932 (8th Cir. 2000) (emphasis added). The trial court therefore did not therefore commit any error in its instruction. For the court to instruct the jury that Ms. Beard's conditions alone must have been made intolerable is therefore not an abuse of discretion. Although the jury was not specifically instructed that it could consider the harassment of co-workers, moreover, we believe that it was implicit that this evidence could be considered, particularly when, as here, Ms. Beard's counsel argued both in opening and closing arguments that the harassment of her co-workers provided evidence that Ms. Beard was subjected to a hostile work environment. The instructions, therefore, when taken as a whole, fairly and adequately submitted the case to the jury, and thus were proper. *See White v. Honeywell, Inc.*, 141 F.3d 1270, 1278 (8th Cir. 1998).

Ms. Beard next contends that the district court erroneously excluded from evidence testimony about the incident in which Mr. Krout pointed to his groin and said to Ms. Beard and a male employee that he would "show them some experience." The district court excluded this evidence because it found that the incident did not "actually constitute[] 'discrimina[tion] ... because of ... sex.' " *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998) (quoting 28 U.S.C. § 2000e-2(a)(1)). In refusing to admit the evidence, the district court relied on the fact that Mr. Krout made the statement to both Ms. Beard and a male employee, and that Ms. Beard admitted in her deposition that she did not believe the statement was made to her because of her gender.

We review a district court's decision to exclude evidence for an abuse of discretion. *See Excel Corp. v. Bosley*, 165 F.3d 635, 640 (8th Cir. 1999). Ms. Beard herself testified in her deposition that the statement was not made because of her gender, and we agree with the trial court that no reasonable person could conclude that it was. Although clearly boorish, this statement was not itself discriminatory. Because it was not discriminatory, it is irrelevant to the issue of whether Flying J created a sexually hostile work environment that would have rendered Ms. Beard's working

conditions intolerable.  The district court thus committed no error in refusing to admit evidence of this incident.  We are convinced, moreover, that any error committed here was harmless in any case.

Ms. Beard next asserts that the district court erred in admitting evidence involving her sexual behavior at the workplace.  She contends that such evidence is inadmissible under Federal Rule of Evidence 412.  Rule 412 excludes from a "civil ... proceeding involving alleged sexual misconduct" any evidence about a victim's sexual behavior unless certain conditions are met.  Among other things, the rule provides that the party wishing to introduce the evidence must file a motion stating its intention to do so fourteen days before trial and the court must then hold an *in camera* hearing that allows "the victim and parties" the right to be heard.  *See* Fed. R. Evid. 412(c)(1)(A), (c)(2).  Even if these procedural requirements are met, the evidence may not be admitted in a civil trial unless the probative value of the evidence substantially outweighs the potential prejudice and harm to the victim.  *See* Fed. R. Evid. 412(b)(2).  Ms. Beard maintains that neither the procedural nor the substantive conditions for admissibility were met.

We note, as an initial matter, that we have not previously determined whether Rule 412 applies to sexual harassment lawsuits.  *See Excel*, 165 F.3d at 641.  We need not decide this question in this case either, for even if Rule 412 does apply, we believe that the evidence was properly admitted.  The failure to follow the procedural requirements for admission was harmless in light of Ms. Beard's knowledge that Flying J intended to introduce the evidence, *cf. Judd v. Rodman*, 105 F.3d 1339, 1343 & n.8 (11th Cir. 1997), and the evidence was probative because an employee's workplace behavior is highly relevant to the question of whether the alleged harassment was welcome, *see Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 69 (1986).  Nor was this evidence unfairly prejudicial to Ms. Beard.  Rule 412 "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details."

Fed. R. Evid. 412 advisory committee's note. The evidence related to Ms. Beard's non-intimate sexual behavior in a public place that she clearly had no intention to hide from others. Ms. Beard, furthermore, herself introduced into evidence an exhibit in which some of these very same allegations were contained. Because the probative value of the incident substantially outweighed any unfair prejudice that it might produce, we do not believe that the district court erred in admitting this evidence.

Ms. Beard's final argument contests the district court's refusal to grant a continuance of the trial. During Mr. Krout's deposition, which took place about two months before the trial, he admitted that he had been accused of sexual misconduct during his employment at a Flying J restaurant in Sullivan, Missouri. Mr. Krout, however, said that he could not remember the name of his accuser. About four weeks later, or a month before the trial, Flying J provided Ms. Beard with a list of almost one hundred women who could have been the accuser. Ms. Beard's request for a continuance was denied, and her subsequent efforts to find the accuser were equally unsuccessful.

We review the district court's refusal to grant a continuance for an abuse of discretion. *See Rydder v. Rydder*, 49 F.3d 369, 373 (8th Cir. 1995). The witness whom Ms. Beard sought could not have been particularly helpful to her case, since Ms. Beard was not aware of this alleged incident until long after the events on which her claim for sexual harassment was bottomed. *See Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976, 978 (7th Cir. 2000). The absence of this witness also did not appear substantially to prejudice Ms. Beard's case, since her counsel questioned Mr. Krout at length about this incident. There was no evidence, furthermore, that Ms. Beard has ever located this witness despite sending letters to all of the women on the list submitted by Flying J. We therefore cannot know what the witness would have said had she testified. In these circumstances, the district court was well within its discretion to refuse to grant a continuance.

We therefore affirm the judgment for Flying J on the constructive discharge claim.

IV.

Mr. Krout appeals from the award of damages against him for battery. Because this is a state law claim, we are required to apply Iowa law to it. *See Greiner v. City of Champlin*, 27 F.3d 1346, 1355 (8th Cir. 1994).

Mr. Krout first maintains that the district court was without subject matter jurisdiction to hear an intentional tort claim against him because Iowa law commits such claims to the exclusive jurisdiction of its workers' compensation system. In Iowa, workers' compensation laws provide employees with the "exclusive and only right[] and remed[y]" against their employer for those injuries that fall within the laws' purview. Iowa Code §§ 85.20, 85.20(1); *see also Wilson v. IBP, Inc.*, 558 N.W.2d 132, 137 (Iowa 1996), *cert. denied*, 522 U.S. 810 (1997). Iowa's workers' compensation law also provides the exclusive remedy for an employee's claim against a co-worker if the employee's injury "arises out of and in the course of ... employment and is not caused by the other employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another." Iowa Code §§ 85.20, 85.20(2).

Mr. Krout contends that the recent Iowa Supreme Court decision in *Nelson v. Winnebago Industries, Inc.*, 619 N.W.2d 385 (Iowa 2000), commits all intentional tort cases against co-workers to the workers' compensation system and thus preempts the instant case. In *Nelson*, 619 N.W.2d at 386, an employee was injured when his co-workers dropped him while carrying him as part of a prank. While the court referred to the co-workers' actions as a battery, *see id.* at 387, an intentional tort, it was apparent that the true source of injury was the co-workers' negligent dropping of the plaintiff, *see id.* at 386. The court then asked whether there was " 'wanton' " neglect such as to allow a lawsuit to proceed against the co-workers. *Nelson*, 619 N.W.2d at 390 (quoting Iowa Code § 85.20(2)). The court determined that there was no wanton

-12-

neglect and therefore that workers' compensation was the employee's sole remedy. *See id.* at 390-91.

We believe that *Nelson* does not support Mr. Krout's argument. Although, as we have said, the court referred to the incident before it as a battery, there was no evidence to show that the defendants actually intended to drop the plaintiff. In this case, Mr. Krout was alleged to have intentionally committed an injurious act by touching Ms. Beard's breasts. The *Nelson* court, moreover, did not state or even intimate that it was abandoning the general rule that excludes intentional torts such as Mr. Krout's from the exclusive jurisdiction of the workers' compensation system. *See Wilson*, 558 N.W.2d at 137. We thus conclude that the court assumed that intentional torts committed by co-workers remained actionable despite the workers' compensation system, and we hold that Ms. Beard's battery claim is not within the exclusive jurisdiction of the workers' compensation system.

Mr. Krout next complains that the district court erred by resubmitting the battery claim to the jury. The jury found that Ms. Beard proved her battery claim and awarded her $10,000 in punitive damages but left the space provided for a compensatory award blank. The district court, under the erroneous belief that an award of compensatory damages was a necessary prerequisite to awarding punitive damages under Iowa law, resubmitted the case to the jury and instructed it to award punitive damages only if it had awarded compensatory damages. The jury then returned a verdict of $5,000 in compensatory damages and $5,000 in punitive damages.

Mr. Krout maintains that there was nothing defective about the original verdict and that the case should therefore not have been returned to the jury. We agree. Under Iowa law, "an award of punitive damages does not depend on an award of compensatory damages," *Podraza v. City of Carter Lake*, 524 N.W.2d 198, 203 (Iowa 1994), but merely upon a showing "that the defendant actually caused plaintiff some injury." *Hockenberg Equipment Co. v. Hockenberg's Equipment & Supply Co.*, 510

N.W.2d 153, 156 (Iowa 1993). In other words, "the principles underlying exemplary damages are equally served whether actual damages are awarded or merely shown." *Pringle Tax Service, Inc. v. Knoblauch*, 282 N.W.2d 151, 154 (Iowa 1979).

Mr. Krout maintains that he is entitled to judgment notwithstanding the verdict because there was no showing that Ms. Beard suffered any injury from the battery. Ms. Beard testified, however, that after the battery, she felt "differently about things and people," could no longer trust others, and was confused and scared. When, as here, the defendant's conduct was intentional, a plaintiff is entitled to damages for emotional distress under Iowa law even if he or she suffered no physical injury. *See Mills v. Guthrie County Rural Elec. Coop. Ass'n*, 454 N.W.2d 846, 852 (Iowa 1990). Although the jury evidently found that any emotional injury suffered by Ms. Beard was not compensable, or decided that it could not quantify the damages for the emotional injury that she suffered, she nevertheless showed that she suffered some injury at the hands of Mr. Krout that was sufficient to uphold an award of punitive damages if otherwise appropriate.

Mr. Krout also contends that Ms. Beard is not entitled to punitive damages even if she suffered an injury, because she failed to show that the battery "constituted willful and wanton disregard for [her] rights or safety." Iowa Code § 668A.1(a). To show willful and wanton disregard, Ms. Beard is required to "show that the defendant's conduct constituted actual or legal malice." *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 396 (Iowa 2001). "Legal malice is shown by wrongful conduct committed or continued with a willful or reckless disregard for another's rights." *McClure v. Walgreen Co.*, 613 N.W.2d 225, 231 (Iowa 2000). The evidence introduced by Ms. Beard tended to show that Mr. Krout intentionally touched her breasts, and a jury could certainly infer that he did so with a willful disregard for Ms. Beard's rights. We therefore believe that the record contains more than sufficient evidence to allow a jury to award punitive damages.

-14-

Mr. Krout asserts finally that even if Ms. Beard is entitled to punitive damages, the award of $10,000 in this case was grossly excessive in light of the fact that there was no award of compensatory damages. In determining whether an award of punitive damages is excessive, we must consider, among other things, "the degree of reprehensibility of the defendant's conduct and the ratio between the actual harm inflicted on the plaintiff and the punitive damages award." *Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1211-12 (8th Cir. 1999). We believe that Mr. Krout's actions, as testified to by Ms. Beard, are sufficiently reprehensible to justify this award. Although it is technically true that the ratio in this case between actual and punitive damages is infinite, we believe that "[t]he punitive damages awarded here cannot be considered so excessive as to shock the Court's conscience" when it is compared to the conduct to which the witnesses testified. *See Morse v. Southern Union Co.*, 174 F.3d 917, 926 (8th Cir. 1999).

We therefore affirm the judgment on the battery claim but remand for entry of a judgment that gives effect to the original verdict on that claim.

V.

For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part, and remanded for proceedings not inconsistent with this opinion. Mr. Krout's motion to strike portions of the appendix is denied.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-15-