In re Denis J. O'BRIEN, Debtor.

Nicholas Valner and Kenneth Sidney Roberts, as Executors of the Will of George Harrison, Plaintiffs/Appellants,

v.

Denis J. O'Brien, Defendant/Appellee.

Nos. 4:01CV1265–DJS, 4:01CV1392–DJS.

United States District Court,
E.D. Missouri,
Eastern Division.

Sept. 25, 2002.

Eileen M. Love, Millsap and Singer, St. Louis, MO, for debtor.

Deborah J. Volmert, Stolar Partnership, Belleville, IL, Roger L. Funk, Greenberg and Glusker, Los Angeles, CA, for appellants.

Peter Lumaghi, U.S. Department of Justice, Office of Trustee, pro se, Dana McWay, U.S. Bankruptcy Court, St. Louis, MO, for trustee.

## MEMORANDUM OPINION AND ORDER

STOHR, District Judge.

In 1996, appellant George Harrison[1] obtained an $11.7 million judgment against debtor and appellee Denis J. O'Brien, Harrison's former business manager. With post-judgment interest, the unpaid judgment has allegedly increased to more than $18 million. In July 2000, O'Brien filed bankruptcy and sought a discharge of the judgment debt to Harrison. Harrison

---

1. Harrison died on November 29, 2001. By order dated March 12, 2001, the Court granted a motion for the substitution of the executors of Harrison's will as parties-appellant. For the sake of clarity and simplicity, in this opinion the Court will continue to refer to appellant as "Harrison."

filed an adversary proceeding on January 4, 2001, objecting to discharge under 11 U.S.C. § 727 on three grounds of O'Brien's misconduct in the bankruptcy proceedings, namely that O'Brien had made false statements under oath, that he had failed to keep and preserve recorded information and that he had concealed assets in his bankruptcy schedules. In these related appeals, Harrison appeals from the bankruptcy court's dismissal with prejudice of his adversary proceeding against O'Brien (Cause No. 4:01CV1265–DJS) and appeals from the bankruptcy court's order granting O'Brien discharge (Cause No. 4:01CV1392–DJS).

The bankruptcy court's dismissal of Harrison's adversary proceeding was premised upon Harrison's failure to appear for deposition. Harrison argues that the bankruptcy court abused its discretion in three ways: (1) by requiring Harrison to appear for deposition when he assertedly had no knowledge of facts material to the proceeding; (2) by refusing to delay Harrison's deposition until he had recovered sufficiently from cancer surgery; and (3) by dismissing the adversary proceeding with prejudice as a sanction for Harrison's non-appearance at deposition.

### Procedural History and Background

Because the appeal turns on whether the bankruptcy judge abused his discretion, a clear understanding of the progress of the proceedings and the record created before him is necessary. On February 1, 2001, O'Brien served a notice to depose Harrison in O'Brien's counsel's St. Louis offices on February 26, 2001. On February 22, arguing that the adversary proceeding was based on O'Brien's alleged misconduct in the bankruptcy proceedings, of which Harrison personally had no direct

knowledge, Harrison sought a protective order against being deposed. The motion also noted that Harrison was a resident of the United Kingdom who had filed his complaint in Missouri only because O'Brien had established the bankruptcy proceeding there.

On February 23, 2001, O'Brien filed a three-page motion for sanctions pursuant to Bankruptcy Rule 9011 which was largely a reiteration of his earlier-denied motion to dismiss Harrison's complaint for failure to state a claim. No supporting memorandum elaborating on the basis of the motion was filed. The motion requested permission to depose Harrison and his attorneys as quickly as possible. At a February 26 hearing,[2] O'Brien argued that Harrison's motion for a protective order lacked an affidavit from Harrison disclaiming discoverable knowledge, that Harrison was not merely a nominal plaintiff, that Harrison and O'Brien had a long-standing personal relationship which might give rise to Harrison having knowledge of O'Brien's personal financial affairs, that a deposition carried the potential for obtaining useful admissions from Harrison concerning the basis for the complaint, and that submitting to a deposition would work no prejudice to Harrison. Briefly addressing the existence of O'Brien's sanctions motion, O'Brien's counsel suggested that the sanctions issue was another reason to take Harrison's deposition.

Harrison's response was that the contents of the complaint indicated by their nature that Harrison would have no personal knowledge, that his communications with counsel about filing the complaint would be privileged and not subject to testimony at deposition, and that the his-

---

**2.** The bankruptcy court's docket sheet does not reflect this hearing, but O'Brien has submitted a transcript of the hearing prepared from the electronic recording of the proceedings.

torical relationship between O'Brien and Harrison was of no relevance, in effect being merged into the judgment debt Harrison sought to preserve. Harrison also argued that written discovery could be employed first to determine whether Harrison had any relevant knowledge to be inquired into at deposition. The Court indicated at the hearing that it would deny the motion for protective order subject to being renewed upon the filing of an affidavit from Harrison concerning his knowledge or lack thereof. The Court and counsel further agreed that consideration of the motion for sanctions would be deferred until after trial of the adversary proceeding, and that therefore the associated depositions of Harrison's counsel could be indefinitely postponed. Those determinations were expressed in an order signed by the judge on March 19.

The issue of deposing Harrison would next be considered at a hearing on March 26. Just prior to the hearing, O'Brien again noticed Harrison's deposition for April 3 in St. Louis. Harrison's declaration was filed on March 23, 2001. In it, Harrison attested that he had had no contact with O'Brien in almost nine years, since 1992, and that Harrison had no knowledge of O'Brien's conduct in the bankruptcy proceedings or of O'Brien's business or other activities since 1994, except insofar as he had been advised by his attorneys in confidence. At the March 26 hearing, the Court initially expressed an inclination to grant the protective order based on Harrison's declaration. O'Brien again argued that Harrison was not merely a nominal party or one with a titular role for a party, that O'Brien and Harrison had a long-standing personal history, that Harrison might make useful admissions at deposition, and that no substitute for Harrison's deposition had been offered. Harrison's counsel responded, as they had at the earlier hearing, that the parties' per-

sonal history was irrelevant because only the established judgment debt was relevant to the proceedings and that Harrison had no knowledge of O'Brien's personal financial affairs. After hearing these arguments, the Court stated that it would deny the protective order based on the conclusion that "as a matter of fundamental due process the defendant is—should have the ability to take discovery upon the plaintiff." Appellant's Excerpts of Record, p. 74. A summary order setting forth no further rationale was issued on April 4, 2001.

O'Brien noticed Harrison's deposition for April 12. On April 9 O'Brien filed a motion to compel plaintiff to appear in St. Louis for his deposition no later than April 26. The motion was amended and supplemented on April 11. On April 13, 2001, Harrison filed another motion for protective order, this time seeking an order to allow his deposition be taken other than in St. Louis, to delay the deposition until his recovery from "a current illness" and to authorize that the deposition be done by videoconference. Appellant's Excerpts of Record, p. 84. In this motion, Harrison continued to argue that he should not be subjected to a deposition because he had no discoverable information. The motion also mentioned Harrison's concerns about his personal security.

A hearing at which that motion was discussed was held on April 19, 2001. Harrison's counsel argued that a deposition by videoconference would be appropriate because the deposition was likely to be extremely brief, given Harrison's lack of relevant information, and in view of Harrison's well-founded concerns about security. O'Brien argued about the logistical burden and inadequacy of a videoconference deposition, argued that both that request and the medical issue had been waived by Harrison's failure to raise them in his earlier

motion for a protective order, and contended that at best, the Court should order Harrison to submit to a deposition within thirty days. The hearing concluded off the record, with no record being made of any conclusions reached by the Court and/or parties. The court apparently reviewed and considered a declaration dated April 13 from a treating physician of Harrison's. Because the Court would not seal the declaration, Harrison declined to file it of record. On April 24, 2001, the bankruptcy court ordered Harrison to submit to a deposition to occur in London, England no later than May 31, 2001, with Harrison to bear O'Brien's counsel's travel expenses.

As required by the April 24 order, Harrison's counsel provided four dates among which O'Brien could choose in scheduling Harrison's deposition. With the deposition noticed for May 29, O'Brien filed on May 3 a motion to dismiss the adversary proceeding as a sanction based on Harrison's indications that he would not appear on May 29. On May 4, Harrison filed a motion seeking a confidentiality order and seeking leave to file under seal information concerning Harrison's health, all in preparation for the filing of a motion seeking modification of the Court's order requiring his deposition to occur by May 31. On May 4, O'Brien supplemented his motion to dismiss with news clippings from the internet, specifically from USAtoday.com and BBC News Online, quoting a statement released by Harrison's lawyers indicating that Harrison was making an excellent recovery from surgery to remove cancerous tissue from his lungs. O'Brien later filed a People magazine article quoting the same press release. Citing this publicized information concerning Harrison's cancer surgery, O'Brien opposed Harrison's motion to file medical information under seal. Harrison filed written objections to consideration of these news articles as inadmissible hearsay. On May 15, Harrison filed a motion requesting that the bankruptcy court permit his deposition to be deferred to July in view of Harrison's medical condition. The bankruptcy court summarily denied all three of these motions.

Harrison's counsel advised O'Brien that he would not appear for his deposition on Tuesday, May 29 as scheduled. O'Brien thereafter filed another motion to dismiss the case and for other sanctions. A hearing was held on the motion on June 18, 2001, at which it was represented without contradiction that Harrison had traveled to the United States the weekend of May 26 and 27 to attend his son's graduation from Brown University. A second declaration from Harrison's physician, dated June 17, was reviewed and considered by the bankruptcy court at the hearing. Again, because the court refused to file the declaration under seal and no confidentiality agreement was made with O'Brien, Harrison did not provide a copy of the declaration to O'Brien and chose not to file the declaration in the record. At that hearing, the court stated that it would deny the motion for sanctions without prejudice but would order that Harrison's deposition occur in St. Louis no later than July 10, or the case would be dismissed with prejudice. Harrison did not appear for his deposition.

Harrison filed a motion to withdraw the reference, but the bankruptcy court dismissed the adversary proceeding with prejudice on July 13, 2001 as a sanction for wilful disobedience of the court's orders requiring Harrison's appearance for deposition. On August 2, 2001, the bankruptcy court entered its order discharging O'Brien. Harrison later withdrew the motion to withdraw the reference. Harrison died on November 29, 2001.

### Requiring Harrison to Submit to Deposition

■ The Court is not persuaded that the bankruptcy judge abused his discretion in determining that Harrison was subject to being deposed. In this Court's view, the same would be true had the bankruptcy judge determined that Harrison was not subject to deposition, given the uncontradicted declaration of Harrison that he had no first-hand knowledge of O'Brien's conduct in the bankruptcy proceedings and that he had no knowledge of O'Brien's business or other activities since 1994 or of the nature of any of O'Brien's current assets. In other words, on the record before the bankruptcy judge, the issue was a discretionary one as to which either determination was sufficiently reasonable to withstand scrutiny on appeal.

The strongest arguments supporting the decision actually made were presented to, and presumably considered by, the bankruptcy court. Although the focus of the adversary proceeding was O'Brien's conduct, O'Brien had filed a motion for sanctions challenging the complaint as frivolous harassment, and sought an opportunity to inquire into Harrison's basis for filing the complaint. Although much of the complaint cited alleged contradictions within O'Brien's bankruptcy filings, statements and testimony, at least two allegations were made on information and belief that O'Brien had made false statements concerning his interest in a family partnership and an irrevocable trust. Given the historical personal relationship between the parties, O'Brien arguably had a basis for inquiring of Harrison whether his personal information or belief was the basis for those allegations, notwithstanding the generalized disclaimer of Harrison's declaration.

Furthermore, at the time the bankruptcy court determined that Harrison was subject to deposition, Harrison's health and security concerns had not yet been urged as considerations. In the absence of any showing that a deposition was unduly burdensome to Harrison, for whom international travel must certainly have been somewhat routine, the bankruptcy judge cannot be said to have abused his discretion in ruling that as a party to the proceedings, Harrison could be required to submit to deposition to permit his opponent an opportunity to explore whether Harrison had any knowledge relevant to his own claims or O'Brien's defenses.

### Delay of the Deposition Due to Harrison's Medical Condition

■ Next Harrison argues that the bankruptcy judge abused his discretion by refusing to delay the deposition until Harrison recovered from cancer treatment. On this point, the Court also finds no abuse of discretion. An objective view of the procedural history shows that the bankruptcy judge did in fact twice permit additional time for the deposition in view of Harrison's medical condition, so that Harrison's complaint must actually be that the delays received were not sufficiently generous. On the medical evidence presented to the bankruptcy judge, no abuse of discretion can be found.

On two occasions the bankruptcy court was presented with evidence concerning Harrison's medical condition. The first occasion was at the April 19 hearing, after Harrison had failed to appear for a deposition noticed for April 12. The result of that hearing was an order granting an extension through May 31 for the taking of the deposition, to occur in London. The physician's declaration offered at that time, dated April 13, did not identify the nature of Harrison's medical condition or treatment. Instead it represented that Harrison had been released from a hospital on April 2 after a twelve-day stay, that

he continued to undergo medical treatments, and that in the physician's opinion it was advisable for Harrison to avoid speaking, particularly in the form of giving testimony. An indefinite extension is rarely warranted in court proceedings, and on the scant information provided, the bankruptcy court's granting of an extension through May 31 was entirely reasonable.

The second occasion on which medical evidence was offered was the June 18 hearing, at which the physician's June 17 declaration was reviewed by the Court. This declaration was more forthcoming than the previous one, acknowledging that Harrison's March hospitalization was for a cancer surgery on his lung. The physician repeated his earlier representation that Harrison continued to undergo unspecified post-surgical treatment and therapy, which rendered him medically unfit to give testimony, and opined that would continue to be the case for at least 45 days. The result of the June 18 hearing was the bankruptcy court's order that Harrison appear for deposition no later than July 10. The length of this additional time to submit to deposition was not what Harrison hoped for, but cannot be said to have constituted an abuse of the court's discretion on the basis of what was presented to the court.

As was noted during the bankruptcy proceedings by his counsel, Harrison was a man who valued and protected his privacy. While in the particular circumstances of this case it was certainly his privilege not to volunteer detailed information about his medical condition, Harrison could not reasonably expect that a decision to withhold that information from the court, even for valid personal reasons, while at the same time urging his health as an excuse from a court-ordered obligation, would have no adverse consequences in the legal proceedings.[3] The court is a public institution, and much about litigation is incompatible with personal privacy.

### Dismissal of the Complaint as a Sanction

■ Finally, the Court considers whether dismissal of Harrison's adversary proceeding as a sanction for his failure to appear for deposition by July 10 as ordered constitutes an abuse of the bankruptcy judge's discretion. On this point, as the nature of the challenged decision was substantially more serious, appellate review must be more stringent, albeit still on an abuse of discretion standard. *Schoffstall v. Henderson,* 223 F.3d 818, 823 (8th Cir.2000). "[R]eview of sanctions...is more focused when the drastic sanction of dismissal 'or default is imposed," because " '[t]he opportunity to be heard is a litigant's most precious right and should sparingly be denied." ' *Chrysler Corp. v. Carey,* 186 F.3d 1016, 1020 (8th Cir.1999), *quoting Edgar v. Slaughter,* 548 F.2d 770, 773 (8th Cir.1977).

■ Dismissal as a sanction for failure to cooperate in discovery is appropriate where the failure is willful and contumacious, and where it works substantial prejudice to another party. *Keefer v. Provident Life and Accident Insurance Company,* 238 F.3d 937, 940–41 (8th Cir. 2000); *Schoffstall,* 223 F.3d at 823. A party's failure to appear for deposition because the party is medically unfit to be deposed may be intentional, but is not properly characterized as contumacious, that is, as showing contempt for the court's order and authority. Harrison's doctor's June 17 declaration attested that Harri-

---

**3.** The Court here addresses Harrison's determinations as to how much specific information to offer to the court, as opposed to the distinct issue of the court's determination whether to preserve the confidentiality of the information by filing it under seal.

son's continuing cancer treatment was physically and emotionally debilitating and that Harrison was not, and would not be for some time, "well enough to participate in any sort of meeting or proceeding which would be stressful or require him to devote substantial thought or attention to issues in a legal proceeding." The bankruptcy court's determination that Harrison's claims of medical unfitness were exaggerated or not credible appears to have been based on the uncontradicted assertion that Harrison had traveled to his son's college graduation in late May, at the same time as he claimed an inability to sit for deposition, and on the press releases of Harrison's counsel expressing optimistic views of Harrison's condition.

Aside from the question of the admissibility of the media clippings, the weight of an attorney's press release giving an upbeat description of a celebrity's health is clearly considerably less than a treating physician's declaration under oath. Furthermore, Harrison twice asserted in writing the applicable objections to the court's consideration of the media clippings, namely that they represented hearsay within hearsay as to which no exception was urged, and that no evidence of agency was offered to support application of Fed. R.Evid. 801(d)(2) to permit consideration of the content of the press release itself as an admission attributable to Harrison.

As for Harrison's attendance at his son's college graduation, numerous distinctions between attendance at such an event and participation in a deposition are obvious. The graduation is a happy family event, occurring once in a lifetime and not subject to deferral pending improvement in health, and which for Harrison as a mere spectator would be passive and relatively stress-free. By contrast, a deposition is a stressful interactive and adversarial proceeding, for which significant preparation would

likely be required, and an event which can be rescheduled if necessary.

In his final attempt to stave off dismissal, filed July 12, Harrison asserted that there had been no finding that his health permitted him to appear for his deposition on July 10, and that he stood ready to submit under seal a further declaration from his physician concerning his continued medical inability to submit to deposition. The bankruptcy court's unwillingness to treat Harrison's medical evidence confidentially is an issue likely moot for appeal now that Harrison has died, but is puzzling, given the sensitive nature of personal medical information (celebrity or no), and the relevance of the information in this case only to a collateral matter.

In addition, O'Brien failed to establish any substantial prejudice to his position for lack of Harrison's deposition testimony. This is so in large part because of the unrebutted declaration of Harrison concerning his lack of relevant knowledge. As earlier indicated, a determination not to subject Harrison to deposition would have been within the bankruptcy court's discretion on the existing record, such that the failure to obtain the deposition testimony is not shown to have been prejudicial. In fact, the record discloses that O'Brien attempted no showing of prejudice.

### Conclusion

■ "Judicial discretion is 'the responsible exercise of official conscience on all the facts of a particular situation,' taking into consideration the purpose of the exercised power." *Wright v. Sargent,* 869 F.2d 1175, 1176 (8th Cir.1989), *quoting Welsh v. Automatic Poultry Feeder Co.,* 439 F.2d 95, 97 (8th Cir.1971). The bankruptcy court did not abuse its discretion when it ruled that George Harrison was subject to deposition by Denis O'Brien, or in granting extensions of time for the deposition to occur in view of Harrison's contentions concerning

his medical condition. Having carefully considered the entire record before the bankruptcy court, this Court concludes, however, that in the circumstances presented, to dismiss the adversary proceeding was an abuse of the bankruptcy court's discretion because a finding that the medical excuse was insufficient was unsupported and because no substantial prejudice to the opposing party was shown.

The Court therefore separately enters this day a judgment reversing the bankruptcy court's July 13, 2001 orders dismissing George Harrison's complaint objecting to discharge in Adversary Proceeding 01–4003 and the August 2, 2001 order granting Denis J. O'Brien discharge in Bankruptcy Case 00–47491–399. Reversal on this basis does not warrant the directive, requested by Harrison, that the case be reassigned to a different judge on remand. O'Brien's motion for an award of costs and fees on the ground that Harrison's appeal is frivolous will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Denis J. O'Brien's motion for costs and fees for frivolous appeal [Doc. # 17 in Cause No. 4:01CV1265–DJS] is denied.