# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-4020

_____

Chrysler Corporation,

        Appellee,

v.

John J. Carey; Joseph P. Danis;
Carey & Danis, L.L.C.,

        Appellants.

Appeal from the United States
District Court for the Eastern
District of Missouri.

_____

Submitted: June 14, 1999

Filed: July 26, 1999

_____

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and PANNER,[1] District Judge.

_____

BEAM, Circuit Judge.

Chrysler brought this action for breach of fiduciary duty against its former counsel. Chrysler alleged that its former counsel had shared or used its confidential information to aid attorneys prosecuting product liability claims against Chrysler. After four days of trial, the evidence established repeated discovery abuses by the

_____

[1]The Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation.

defendants. As a sanction, the district court[2] struck the pleadings of the defendants, entered judgment against the defendants on the issue of liability, and submitted the case to the jury to determine damages. Defendants appeal and we affirm.

## I. BACKGROUND

The defendants, John Carey and Joseph Danis are both attorneys and former associates of the St. Louis law firm of Thompson & Mitchell (T&M). T&M represented Chrysler as lead counsel in most of Chrysler's product liability class action litigation. Carey and Danis worked on five Chrysler lawsuits: the Osley case, involving allegedly defective heater cores; and four others involving allegedly defective door latches. Carey, the more senior of the two attorneys, drafted motions and briefs, conducted discovery, and communicated frequently with Chrysler's in-house counsel. Specifically, he drafted a third-party complaint, identified potential expert witnesses and participated in discussions with Chrysler regarding class action defense issues and settlement strategy. In connection with the settlement of the Osley case, Carey redrafted the plaintiffs' amended complaint in order to make it as broad as possible to achieve the greatest possible res judicata effect. Most of Danis's Chrysler work consisted of research, writing briefs, and drafting discovery requests and responses. In 1993 and 1994, his last two years at T&M, Carey billed twenty-seven percent of his time to Chrysler litigation. In 1994, Danis billed twenty-three percent of his time to Chrysler. During the litigation of these cases, regular exchanges of confidential information took place between Chrysler and T&M. Carey and Danis had complete access to T&M's Chrysler files and T&M's computer network which contained drafts and final versions of pleadings, research, memoranda, and communications with Chrysler.

---

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

Carey and Danis left T&M in January 1995 and formed their own law firm, Carey & Danis, L.L.C. (Carey & Danis). They shared office space with the law firm of Danis's father, David Danis, Danis, Cooper, Cavanaugh & Hartweger, L.L.P. (Danis, Cooper). When they left T&M, Carey and Danis took 996 pages of Chrysler-related documents, including documents pertaining to cases they had never worked on and memoranda labeled "Confidential and Privileged."

Shortly after Carey and Danis started their firm, they became members of a small, informal group of attorneys who regularly worked together on class action lawsuits. This group included David Danis, Joseph Phebus of Illinois, John Deakle of Mississippi, Michael Campbell of Florida, and J.L. Chestnut of Alabama (the group). In 1995 and 1996, members of the group filed class actions against Chrysler in New Jersey, Mississippi, and Alabama. In August 1995, Cary & Danis became involved with Dennis Beam regarding a potential class action suit against Chrysler involving an anti-lock brake system (ABS). Carey & Danis arranged to have Beam represented by Danis, Cooper and another firm. However, the petition in the Beam case was modeled on the Osley amended complaint that Carey had drafted for Chrysler and taken from T&M. After it become aware that Chrysler was investigating a possible conflict of interest, the second firm withdrew and Carey & Danis joined Danis, Cooper as attorneys of record for Beam. In December 1995, T&M wrote Carey & Danis and demanded that they withdraw from the Beam case because their actions were "wholly inconsistent with their fiduciary obligations" to Chrysler. Meanwhile, Carey & Danis had already begun to explore the possibility of joining Beam with another class action ABS case against Chrysler that was already filed in New Jersey, Chin v. Chrysler. After receiving the letter from T&M, David Danis dismissed the Beam case in St. Louis without prejudice and joined Beam with the Chin case. The amended complaint listed only Danis, Cooper as co-counsel. Later, Danis, Cooper withdrew from the case after its involvement was challenged by Chrysler.

In October 1995, another member of the informal group, John Deakle, filed an ABS class action suit against Chrysler in Mississippi and sent Carey & Danis a letter discussing a potential division of fees. Portions of Deakle's complaint mirrored the Beam complaint. In June 1996, group member Chestnut filed an ABS class action suit against Chrysler in Alabama. Carey and Danis deny that they participated in any class action suit against Chrysler.

Chrysler filed this action against Carey, Danis, and their firm in March 1996 alleging, *inter alia,* breach of fiduciary duty. In an effort to determine the extent of the role Carey and Danis played in the ABS cases, Chrysler served interrogatories and requests for documents upon Carey and Danis, and upon the non-party members of the group as well. When asked to produce documents pertaining to any communication Carey & Danis had with anyone else regarding ABS class action litigation against Chrysler, Carey & Danis responded "No such documents exist." The discovery process was, to say the least, protracted and acrimonious. The non-party attorneys fought every effort to produce documents, forcing Chrysler to litigate the issue in several different jurisdictions. The pre-trial litigation lasted over two years.

At trial, Chrysler introduced forty-two letters and other pieces of correspondence which had been sent to or from Carey and Danis that involved class action litigation against Chrysler. On the morning of the fourth day of trial, defense counsel shared with Chrysler's counsel some documents he intended to use in the cross-examination of a witness. Among those documents, was a letter dated December 13, 1995, written by Joseph Danis to Paul Grossman, the attorney representing the plaintiffs in the New Jersey ABS class action against Chrysler. The letter was a recap of a previous meeting between Danis, his father David Danis, and Grossman regarding the possibility of joining Beam as a plaintiff in the action filed by Grossman. The letter had never been disclosed to Chrysler. Shortly before the lunch break, Chrysler brought the letter to the court's attention and moved that the court strike the defendants' answer. After reviewing interrogatories and requests for production of documents and corresponding

-4-

responses, and after hearing from counsel, the district court struck the defendants' answer, resulting in a default judgment for Chrysler on the issue of liability.

Carey and Danis appeal, arguing that the imposition of the sanction was an abuse of discretion, and that even if a sanction were warranted, the severity of the sanction was an abuse of discretion. They further argue that they did not receive a fair hearing before the court struck their pleadings.

## II.    DISCUSSION

The district court imposed the sanction under Rule 37 of the Federal Rules of Civil Procedure and the inherent authority of the court. Our review is deferential, and we will not reverse a decision by the district court imposing sanctions absent an abuse of discretion. See, e.g., Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 280 (8th Cir. 1995). This review applies to the decision to impose a sanction, the nature of the sanction imposed, and the factual basis for the court's decision. See Dillon v. Nissan Motor Co., 986 F.2d 263, 267 (8th Cir. 1993).

In order to impose sanctions under Rule 37, there must be an order compelling discovery, a willful violation of that order, and prejudice to the other party. See Baker v. General Motors Corp., 86 F.3d 811, 816 (8th Cir. 1996), rev'd on other grounds, 118 S. Ct. 657 (1998). Carey and Danis argue that Chrysler suffered no prejudice from the nondisclosure of the letter because Chrysler, through depositions, was already aware of all the information contained in the letter.[3] Carey and Danis also argue that the court

---

[3]The essential facts contained in the letter are: (1) Danis and his father met with the two attorneys in New York the Sunday before the letter was written; (2) the New York attorneys represented plaintiffs in an ABS class action against Chrysler filed in New Jersey; (3) the conversation centered around joining the Beam case with the New Jersey litigation; (4) Carey and Danis were aware of a Brown case filed by Deakle in Mississippi; (5) Carey and Danis had lined up plaintiffs in other states; and (6) Danis

could not have found the failure to produce the letter to be a willful violation of discovery.[4] We agree with the defendants, as far as their argument goes. The letter revealed little or nothing unknown to Chrysler. A year before trial, Chrysler knew of the meeting between David Danis, Danis and Grossman as well as the attempted joinder of the <u>Beam</u> case to the New Jersey case. In fact, much of the information contained in the letter was recited in the district court's May 1998 order denying summary judgment. <u>See</u> <u>Chrysler Corp. v. Carey</u>, 5 F. Supp.2d 1023, 1030 (E.D. Mo. 1998). Chrysler also knew of Deakle's Mississippi case, and had deposed Deakle. Had the letter been properly produced in discovery, as it should have been, it may have made Chrysler's later discovery more efficient, or at most may have led to further inquiry. However, that speculation does not translate into prejudice sufficient to sustain the drastic sanction of a stricken answer. Chrysler points to nothing that would have changed the nature of its case or its trial strategy had it known about the letter.

Unfortunately, our review of the record shows Carey and Danis mischaracterize the district court's ruling. While the production of the letter on the fourth day of trial may have been the catalyst for the investigation leading to the imposition of the sanction, a fair appraisal of the record reveals that the court was motivated in fact by a systematic pattern of abuse and "blatant disregard of the Court's orders and the discovery rules." After it was presented with the last-minute disclosure of the letter, the court reviewed interrogatories and document requests along with the corresponding responses by the defendants. The court soon concluded that, not only was the letter plainly responsive to multiple requests, but so too were many, if not all, of the forty-two documents obtained from the other members of the informal group which had been

---

suggested a basic agreement allocating attorney's fees at the beginning of the joint endeavor.

[4]The defendants do not dispute the existence of a court order. <u>See</u> <u>Chrysler Corp. v. Carey</u>, No. 4:96CV591 CDP (E.D. Mo. Mar. 13, 1997) (order granting and denying various motions and compelling discovery).

either sent to, or written by, the defendants. Thus discovery responses by Carey and Danis denying the existence of communications and documents were clearly false in regards to at least those documents, and probably more.

Even if the court had accepted the explanation offered by the defendants as to why they failed to produce the letter to Grossman, it was faced with a large number of other documents that were clearly responsive to multiple interrogatories and document requests, yet had not been produced. The court concluded that the answers to the interrogatories and document requests were plainly perjurious and not credible, as was the defendants' deposition testimony. This alone is sufficient violation of discovery rules to warrant sanction by the district court.

Carey and Danis further argue that, even if the sanction were appropriate, the extreme sanction of striking their pleadings was not. As they correctly point out, our review of sanctions imposed by the district court is more focused when the drastic sanction of dismissal or default is imposed. See, e.g., Fox v. Studebaker-Worthington, Inc., 516 F.2d 989, 993 (8th Cir. 1975). We review such severe sanctions more closely because "[i]n our system of justice the opportunity to be heard is a litigant's most precious right and should be sparingly denied." Edgar v. Slaughter, 548 F.2d 770, 773 (8th Cir. 1977). As this court recently noted, there is a strong policy in favor of deciding a case on its merits, and against depriving a party of his day in court. See Baker, 86 F.3d at 817. However, if a default judgement lies within the spectrum of appropriate sanctions, we will not substitute our own judgment for that of the district court even though we may have chosen a different sanction had we been standing in the shoes of the trial court. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642 (1976).

In this case, the district court found that the defendants repeatedly lied during the discovery process, denying the existence of conversations and documents which had in fact occurred and did exist. This is far more egregious conduct than simple foot-

dragging or even making unfounded challenges to discovery requests. The defendants' flat denials that conversations had occurred and that documents existed precluded any follow-up discovery and thus denied Chrysler the ability to conduct effective discovery. And, as these statements were made under oath, they are a direct affront to the court.

Several examples of the defendants' responses will suffice to show the egregiousness. In its initial interrogatories, Chrysler asked Carey and Danis if they had communicated with anyone regarding the class actions against Chrysler in St. Louis, Mississippi, New Jersey, or in the Brown case in Alabama. They responded that the only communication was a few casual conversations over lunch with Danis's father (of the Danis, Cooper firm), and only about the New Jersey case. However, the documents later received into evidence showed that, by the time the interrogatory was answered, at least eighteen documents relating to one or more of the listed cases had been sent to Carey & Danis, not to mention the letter Danis sent to Grossman. And though the correspondence continued, the interrogatories were never supplemented to reflect the communications and documents. It is obvious from the evidence that Carey and Danis were at the least being kept abreast of developments and strategy in these cases. In March 1997, in response to the court's order, Carey and Danis stated that the only agreement they had for another to pay their fees and expenses in defending the instant action was with CNA, their insurance carrier, and that they had no agreements to share in any fees generated from litigation against Chrysler. However, correspondence among members of the group (copies of which had been sent to Carey and Danis) makes it clear that not only had the group agreed to pay the expenses incurred in this action, but that they had agreed to pay the expenses out of awards received in the various cases they had pending against Chrysler.

The district court thus concluded that the letter to Grossman was just "the tip of the iceberg," when viewed in conjunction with the forty-two other documents. The court determined that the defendants had not only failed to follow the normal rules of

discovery, but had probably withheld more material as well.[5]  The court went on to state that "I no longer have faith in the adversary system being conducted according to the rules. . . .  I have lost faith in the discovery rules being followed in this case.  I have no faith that they have been followed, and I don't know what else has been concealed.  That is why I am imposing the sanction."

Faced with evidence of widespread abuse of the discovery process, the prejudice to Chrysler goes far beyond merely the added time and resources expended to discover evidence.  Chrysler went to trial lacking evidence it would have had but for the deceit of the defendants.  The efforts by Carey and Danis to deny and conceal evidence, and to provide false and misleading testimony, seriously threatened the integrity of the trial as well as the judicial process in general.  We have reviewed the record and find substantial evidence that the misleading statements by the defendants were willful and resulted in prejudice to Chrysler.  Although the failure to recall seeing a document may be a plausible explanation in some circumstances, the same cannot be said when that excuse is used for forty-two documents, some of which were written by the defendants themselves.

We have previously noted that "[w]hen a litigant's conduct abuses the judicial process, . . . dismissal of a lawsuit [is] a remedy within the inherent power of the court."  Pope v. Federal Express Corp., 974 F.2d 982, 984 (8th Cir. 1992).  Similarly, Rule 37 "grants a district court the authority to enter a default judgment against a party who abuses the discovery process."  Comiskey v. JFTJ Corp., 989 F.2d 1007, 1009 (8th Cir. 1993).  Thus, striking a party's pleadings under Rule 37 is within the range of appropriate sanctions when a party demonstrates a "blatant disregard of the Court's orders and the discovery rules," engaging in a pattern of deceit by presenting false and

_____

[5]Chrysler had been unable to compel all the members of the group to produce documents, and the court acknowledged that it had placed limits on the number of documents some of the non-party law firms had to produce.

-9-

misleading answers and testimony under oath in order to prevent their opponent from fairly presenting its case. We find that the district court did not abuse its discretion by striking the defendants' answer.

Carey and Danis assert that the court should not have stricken the pleadings when the sanction of a monetary penalty was available. Sanctions are "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but [also] to deter those who might be tempted to such conduct in the absence of such a deterrent." National Hockey, 427 U.S. at 643. The district court is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances. The sanction was imposed after four days of trial, near the close of Chrysler's evidence. Even if a monetary penalty could have achieved the desired punitive and deterrent effects, it could have done nothing to remedy the lack of integrity in the case being presented to the jury. The district court expressly considered less onerous sanctions and determined that under the circumstances a lesser sanction "would not remedy the wrong that has been done to the litigation process before us."

Carey and Danis next argue that the district court failed to give them a hearing before imposing the sanction. While there is no requirement for an evidentiary hearing prior to the imposition of sanctions, the power of the district court is limited by the due process clause of the Fifth Amendment. See Societe Internationale v. Rogers, 357 U.S. 197, 209 (1958). This court has previously held that no hearing is necessary before sanctions are imposed where the record demonstrates a willful and bad faith abuse of discovery and the non-cooperating party could not be unfairly surprised by the sanction. See Comiskey, 989 F.2d at 1012. As noted, the record amply demonstrates such bad faith on the part of Carey and Danis. Since Carey and Danis are both attorneys, and were warned, along with Chrysler, that failure to comply in good faith with the Rules of Civil Procedure could result in sanctions "which could be dispositive of this case,"

<u>Chrysler Corp. v. Carey</u>, No. 4:96CV591 CDP, slip op. at 15 (E.D. Mo. Mar. 13, 1997), we find no surprise, much less unfair surprise.

In any event, we find that Carey and Danis received a hearing adequate to satisfy the dictates of due process.  The letter was brought to the court's attention shortly before the noon recess.  Some discussion was had between counsel and the court as to the origin of the letter and why it had not been produced.  The court then compared the letter to various interrogatories and document requests and determined that the responses to them were plainly false.  The court also noted the connection between the letter and the forty-two documents introduced earlier.  Counsel was then permitted to argue to the court on the issue of prejudice.  After lunch, defense counsel was allowed to offer another explanation as to why the letter had not been produced, and there was a significant amount of discussion between counsel and the court.  The court then recessed for about an hour to review interrogatories, document requests, the responses, and the record.  After the recess, the court recapped the discovery in the case and presented its conclusion that sanctions were appropriate.  The court then invited defense counsel to argue in support of a sanction less drastic than that asked for by Chrysler.  Defense counsel did so at length in a soliloquy covering five pages of transcript.  The court then struck the defendants' answer.

Contrary to the defendants' clear assertion, the district court did not decline to grant them a hearing "despite repeated requests" by the defendants.  The record clearly shows no such requests were made prior to the imposition of the sanction.  The following Monday morning, defense counsel was again allowed to argue against the sanction, and present segments of deposition testimony to bolster the claims made earlier that the letter had been innocently withheld. Defense counsel was also permitted to make an offer of proof on the testimony of Joseph Danis, if he were questioned about the creation and subsequent handling of the letter.  However, we find nothing in the offer of proof that is different from the arguments that had already been presented by defense counsel.  The proposed testimony involved only the letter and did not address

-11-

the pattern of deceit that motivated the court to impose the sanction.  The lack of any new argument shows that Carey and Danis had a full opportunity to argue their case before the district court.  Due process is satisfied if the sanctioned party has a real and full opportunity to explain its questionable conduct before sanctions are imposed.  See Kraszewski v. State Farm Gen. Ins. Co., 130 F.R.D. 111, 114 (N.D. Ca. 1984).

Carey and Danis also appeal the district court's denial of summary judgment.  Chrysler Corp. v. Carey, 5 F. Supp.2d 1023 (E.D. Mo. 1998).  We find no error and agree with the district court's extensive and well-reasoned opinion.  See 8th Cir. R. 47B.

## III.  CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.