**Marian CARTER Individually and as Administrator of the Estate of Reginald Carter, and as parent and next friend of Reginald Carter, Jr., Tamisha Carter, La Rissa Carter, Pheleppe Wright, Latoya Wright, and Ranisha Wright, Plaintiffs,**

v.

**GENERAL CAR AND TRUCK LEASING SYSTEM, INC., and Merchants Capital Resources, Defendants.**

No. C99–0062.

United States District Court, N.D. Iowa, Cedar Rapids Division.

Nov. 8, 2001.

Kevin J. Caster, Robert D. Houghton, Shuttleworth & Ingersoll, Cedar Rapids, IA, for Plaintiffs.

Edward J. Krug, Krug & Beckelman, Patrick John O'Connell, Lynch, Dallas, Smith & Harman, PC, Gregory M. Lederer, Simmons, Perrine, Albright, Ellwood, Cedar Rapids, IA, Patrick V. Waldron, Patterson & Lorentzen, Des Moines, IA, for Defendants.

Andrew J. Bracken, James R. Wainwright, Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Harry Perkins, III, Michael Shelby Jones, Patterson & Lorentzen, Des Moines, IA, for Third Party Defendants.

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to defendant General Car & Truck Leasing System, Inc.'s October 17, 2000 motion for sanctions (docket number 59). A hearing

was held in the matter on December 22, 2000. For the reasons set forth below, the motion is granted.

## FACTUAL BACKGROUND

The dispute between the parties arises from the death of Reginald Carter in a tractor-trailer accident on December 30, 1997. The plaintiffs filed a wrongful death action against General Car & Truck Leasing System, Inc. (General Car) on the theory that General Car negligently maintained the brakes of the trailer that Reginald Carter was hauling. The plaintiffs in this case include Marian Carter, the wife of Reginald Carter, and their three children. Marian Carter asserted a loss of consortium claim in this lawsuit.

When General Car deposed Marian Carter on January 13, 2000, General Car asked whether she had been dating anyone since her husband's death. She stated she was dating a man named Paul Brooks. Defense counsel asked:

Q. Any plans to marry?

A. Not at the present time, no.

Q. Are you engaged to him?

A. No, we're not engaged.

After taking Marian Carter's deposition, General Car learned that a wedding ceremony had taken place between Marian Carter and Paul Brooks in the Fall of 1999. In a request for admission, Carter denied that she had remarried during the 1999 calendar year. In an answer to an interrogatory, Carter stated: "I have not participated in a wedding ceremony or pseudo wedding ceremony."

On August 9, 2000, General Car deposed Melvin Brown, a cousin of Reginald Carter, about the wedding ceremony of Marian Carter and Paul Brooks. Brown testified to the following: the wedding ceremony occurred at Marian Carter's home; he received an invitation to it; close to 100 people were in attendance; there were maids of honor; there was music and singing; Marian Carter wore a wedding dress and Paul Brooks wore a tuxedo; Marian's son walked her down the aisle; the couple exchanged vows and rings; and the pastor who performed the ceremony declared them married. An affidavit from Barbara Doolin states she attended the wedding in September 1999 and that her daughter was in the wedding party. She stated 75 to 100 people were in attendance at the ceremony and that everyone went to a reception at Ellis Landing following the ceremony.

Melvin Brown also testified during his deposition that Marian Carter asked him to testify that she had not gotten married.

Q. Did [Marian Carter] say I'd be asking you some questions about whether she and Paul got married?

A. Yes.

Q. What did she say about that? You're under oath, sir.

A. Right. She told me to say no.

Q. She told you to say no, that she had not gotten married?

A. Yes.

. . . .

Q. When she told you to say no if I asked if she had gotten married, what did you say to her?

A. I told her—well, she said she know it [would be] hard for me to tell a lie, so—I told her I would, but I ain't never been able to tell a lie.

Q. So let me just understand what you just said. You told her that you would lie?

A. Yeah.

Q. But in your heart you know that you couldn't lie?

A. Yes.

Q. Okay. And when she walked out of your house, did she believe that you were going to go and tell me that she hadn't been married?

A. I believe so.

In an affidavit supplied to the court at the hearing, Marian Carter stated that she did not ask Melvin Brown to lie for her. She stated: "I do not consider the event at my home in September 1999 to have been a wedding. I did not marry Paul Brooks on that day or any other day."

## CONCLUSIONS OF LAW

General Car requests that the court enter the sanction of dismissing Marion Carter's loss of consortium claim because of her repeated denials that she participated in a wedding ceremony with Paul Brooks and her attempt get Melvin Brown to lie about the ceremony at his deposition. *Fed.R.Civ.P.* 37(c) provides for discovery sanctions when a party makes false or misleading disclosures. When a party fails to disclose information required by Rule 26(a), which includes discovery obtained by interrogatories and requests for admissions, Rule 37 provides that the court shall order that the evidence be inadmissible at trial. *Fed.R.Civ.P.* 37(c)(1). In addition, the Rule allows the court to impose other appropriate sanctions, including payment of reasonable expenses and attorney's fees, and allows the court to impose sanctions authorized under Rule 37(b)(2), including entering "[a]n order striking out pleadings or parts thereof, ... or dismissing the action or proceeding or any part thereof...." *Id.; Fed.R.Civ.P.* 37(b)(2)(C). In addition to the power provided from the discovery rules themselves, the Eighth Circuit has "noted that 'when a litigant's conduct abuses the judicial process, dismissal of a lawsuit is a remedy within the inherent power of the court.'" *Chrysler Corp. v. Carey,* 186 F.3d 1016, 1022 (8th Cir.1999) (quoting *Pope v. Federal Express Corp.,* 974 F.2d 982, 984 (8th Cir.1992)) (alterations omitted).

Carter argues the details regarding her remarriage are irrelevant and immaterial and therefore do not warrant the extreme sanction of dismissing her loss of consortium claim. Rule 37 provides that false information given during discovery "shall not ... be permitted to [be] use[d] as evidence at trial...." *Fed.R.Civ.P.* 37(c)(1). However, the details regarding a plaintiff's remarriage are not admissible in a loss of consortium claim under the collateral source rule. *Groesbeck v. Napier,* 275 N.W.2d 388, 391 (Iowa 1979) (holding that a plaintiff's remarriage is inadmissible in a suit for the wrongful death of a spouse).[1] In addition to arguing that she was not actually involved in a

wedding ceremony, Carter argues that because information regarding a remarriage is not admissible, she should not be sanctioned. The deposition of Melvin Brown and the affidavit of Barbara Doolin clearly indicate that a wedding ceremony did in fact occur. Her claims and denials of a wedding during discovery are ridiculous in light of the evidence against her. She obviously did not know that the collateral source rule protected her but she went to great lengths to undermine the discovery process.

Carter's conduct warrants the extreme sanction of dismissal of her loss of consortium claim. The sanction of dismissing a cause of action is an extreme remedy: "[T]here is a strong policy in favor of deciding a case on its merits, and against depriving a party of his day in court." *Chrysler Corp. v. Carey,* 186 F.3d 1016, 1020 (8th Cir.1999). "This policy rests upon the recognition that the opportunity to be heard is a litigant's most precious right and should be sparingly denied." *Bass v. General Motors Corp.,* 150 F.3d 842, 851 (8th Cir.1998) (quotations omitted). "[B]efore imposing the sanction of dismissal, fairness requires a court to consider whether a lesser sanction is available or appropriate. The district court is not, however, constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." *Keefer v. Provident Life & Accident Insurance Co.,* 238 F.3d 937, 940–41 (8th Cir.2000) (citing *Baker v. General Motors Corp.,* 86 F.3d 811, 817 (8th Cir.1996), *rev'd on other grounds,* 522 U.S. 222, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998); *Chrysler Corp.,* 186 F.3d at 1022).

An award of attorney's fees in this case would not be sufficient to punish the severe misconduct of Marian Carter. Mrs. Carter's actions are egregious. In her deposition, she stated she had no intent to remarry even though she and Mr. Brooks had taken part in a ceremony complete with bridesmaids, music and the exchange of wedding vows. She continues to deny that any form of a wedding ceremony occurred at her home in Septem-

---

1. While inadmissible, the discovery on this issue was appropriate to determine whether the plaintiff's new relationship began before or after her first husband died.

ber 1999. Furthermore, Melvin Brown testified that Mrs. Carter asked him to testify at his deposition that no wedding had occurred. Mrs. Carter's conduct was a purposeful and deliberate attempt hide the true nature of her relationship with Mr. Brooks when, in reality, their relationship would have had no effect on her loss of consortium claim. She compounded the problem severely when she visited her cousin at home in an attempt to get him to fabricate evidence at his deposition. The egregious nature of Mrs. Carter's behavior warrants dismissal of her loss of consortium claim.

Upon the foregoing,

IT IS ORDERED

Defendant General Car's October 17, 2000, motion for sanctions (docket number 59) is granted. Plaintiff Marian Carter's loss of consortium claim (and that claim only) is hereby stricken as a discovery sanction.

IT IS FURTHER ORDERED

Third-party defendant API Supply's December 27, 2000, motion for extension of the discovery deadline (docket number 72) is granted. The time for completion of discovery is extended to and including March 1, 2001.

January, 2001.