# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-3177

_____

SPV-LS, LLC

*Plaintiff - Appellee*

v.

Transamerica Life Insurance Company

*Defendant*

Nachman Bergman, as Trustee of The N Bergman Insurance Trust dated December 18, 2006; Malka Silberman, as Successor Trustee of The N Bergman Insurance Trust dated December 18, 2006; Life Trading Trust, dated August 8, 2007; T-Leg, LLC, also known as TLEG LLC; Financial Life Services, LLC; SPV II LLC

*Third Party Defendants*

The Representative of The Estate of Nancy Bergman

*Third Party Defendant - Appellant*

_____

No. 17-3179

_____

SPV-LS, LLC

*Plaintiff - Appellant*

v.

Transamerica Life Insurance Company

*Defendant*

Nachman Bergman, as Trustee of The N Bergman Insurance Trust dated December 18, 2006; Malka Silberman, as Successor Trustee of The N Bergman Insurance Trust dated December 18, 2006; Life Trading Trust, dated August 8, 2007; T-Leg, LLC, also known as TLEG LLC; Financial Life Services, LLC; SPV II LLC

*Third Party Defendant*s

The Representative of The Estate of Nancy Bergman

*Third Party Defendant - Appellee*

————————

Appeals from United States District Court
for the District of South Dakota - Sioux Falls

————————

Submitted: October 16, 2018
Filed: January 8, 2019

————————

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

————————

SHEPHERD, Circuit Judge.

The Estate of Nancy Bergman (the Estate), through its personal representative, appeals a district court order denying its motion for reconsideration of an adverse grant of summary judgment. SPV-LS, LLC (SPV) cross-appeals the district court's denial of 28 U.S.C. § 1927 and Fed. R. Civ. P. 26(g)(3) sanctions against the Estate's attorneys. The district court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction pursuant to 28 U.S.C. § 1291. For the following reasons, we affirm in part and reverse in part, remanding for further consideration the denial of sanctions against attorney Gerald Kroll.

-2-

I.

This case concerns a $10 million life insurance policy (the Policy) issued by Transamerica Occidental Life Insurance Company (Transamerica) on the life of octogenarian Nancy Bergman. While the Estate and SPV differ in their interpretations of the motives underlying much of what happened, the basic facts are as follows.

Sometime prior to October 2006, Nancy's grandson, Nachman Bergman, approached her about procuring life insurance as part of an investment scheme. Nachman explained that 82-year-old Nancy would apply for life insurance, which would be funded by a group of investors led by Jacob Herbst. The investors would then sell all acquired policies on the secondary market after the two-year contestability period expired, giving Nancy a small share of the profits. Nancy agreed to participate and Transamerica issued a $10,000,000 certificate of insurance to her in October 2006. In December 2006, Nancy executed a trust instrument establishing the N Bergman Insurance Trust (the Trust) and appointing Nachman as its sole trustee and primary beneficiary. Pursuant to paperwork filed by Nancy and Nachman, Transamerica then issued the Policy in March 2007. The Policy certificate designated the Trust as the Policy's intended owner. The investors provided funds for Policy premiums, which were paid through the Trust.

In 2009, Financial Life Services (FLS) contracted with the Trust to purchase the Policy for $1,350,000. FLS is a life settlement provider—a company which purchases life insurance policies for more than the cash surrender value but less than the amount of death benefits payable under the policy, then collects the death benefits when the insured individual dies. Shortly after executing the purchase agreement, FLS learned that the Trust had failed to pay $64,500 in Policy premiums. FLS paid these premiums to prevent the Policy from lapsing. FLS then learned that Nancy's life expectancy was materially longer than represented and that, contrary to the Trust's representations, investor funds, not family funds, had paid for the Policy. FLS found this significant

because life insurance policies paid for by and intended to benefit strangers (stranger-originated life insurance policies, or STOLIs), are worth less on the secondary market than policies funded by the insured individual or her family members. This is because, in the secondary insurance market, STOLIs are widely considered to be indicia of fraud.

FLS discovered these facts before paying the Trust for the Policy and therefore invoked a provision of the purchase agreement allowing it to rescind its purchase of the Policy based on fraud in the procurement of the sale contract. It also requested reimbursement of the premiums it paid. When its efforts to rescind the transaction failed, FLS instead exercised its contractual right under the purchase agreement to tender a reduced purchase price in light of the Trust's misrepresentations as to Nancy's life expectancy and the Policy's funding source. FLS tendered the contractually-determined alternate purchase price of $610,500, which the Trust rejected. FLS filed a breach of contract suit against the Trust in the Eastern District of New York, seeking rescission of the purchase agreement and reimbursement of advanced premiums. It continued to pay premiums to prevent the Policy from lapsing.

The New York district court ultimately entered judgment in FLS's favor for over a million dollars, including premium reimbursements, post-judgment interest, and attorneys' fees. Because the Trust admitted it could not pay, the district court ordered a sale of the Policy—the Trust's only asset—at auction to satisfy that judgment. FLS submitted the winning—and only—bid of $1,194,522 and eventually transferred the Policy to SPV.

Nancy Bergman died on April 6, 2014. SPV submitted a claim for death benefits under the Policy to Transamerica on May 29, 2014. Transamerica refused to pay SPV's claim because it received competing claims from Nachman Bergman and from Jacob Herbst's wife Malka Silberman, both of whom claimed to be trustee of the Trust. Seeking payment of the Policy proceeds, SPV filed a complaint against

Transamerica for breach of contract in the United States District Court for the District of South Dakota.[1] In the same action, Transamerica asserted a statutory interpleader under 28 U.S.C. § 1335, deposited the Policy death benefits of $10,000,000 with the district court, and asked the court to determine the respective rights of SPV, the Trust, and Nancy's Estate. The Estate then asserted a cross-claim to the Policy proceeds under N.J. Stat. Ann. § 17B:24-1.1, a New Jersey statute that allows the insured's estate to disgorge proceeds from the contractual beneficiary of a STOLI.

SPV moved for summary judgment on the Estate's cross-claim on two grounds. First, SPV asserted that, under South Dakota choice-of-law analysis, New York law governed the case, making the Estate's statutory claim irrelevant. Second, SPV argued that STOLIs were legal in New York at the time the Policy was procured. The Estate countered that New Jersey law should apply, that New York law was in accord with New Jersey law, and that the Estate should prevail on public policy grounds.

The district court held that New York law applied. It found that, at the time the Policy was procured, New York allowed STOLIs as long as the policy in question was initially procured by the insured or someone with an insurable interest in the life of the insured and that, under Kramer v. Phoenix Life Insurance Co., 940 N.E.2d 535 (N.Y. 2010), an insured could procure a policy with the intent to immediately assign it to stranger investors. See id. at 551-52. The district court further found, as a matter of law, that Nachman Bergman had an insurable interest in his grandmother's life. Based on these facts, the district court granted summary judgment against the Estate and dismissed its claims to the Policy proceeds.

The Estate then filed a motion for reconsideration pursuant to Fed. R. Civ. P. 54(b) and raised a new argument: that Nancy Bergman only acted under nefarious

---

[1]SPV filed this action in South Dakota rather than New York because neither original party is a New York citizen. SPV's parent company, South Dakota Trust Company LLC, is a citizen of South Dakota and Transamerica is a citizen of Iowa.

influence or coercion on the part of the investors. SPV countered that the Estate could have raised this argument at summary judgment and failed to do so, and that the Estate presented no new evidence raising a genuine issue of material fact. The district court noted that the Estate had failed to raise this argument previously, but it nevertheless held the Estate's motion for reconsideration in abeyance and allowed it to conduct limited further discovery. As the discovery deadline neared, the Estate filed a supplemental submission in further support of its motion for reconsideration and presented another new argument: judicial estoppel. The Estate contended that SPV could not argue that the Policy was supported by an insurable interest because FLS, SPV's predecessor in interest, sought to rescind its purchase of the Policy based on its STOLI status. SPV countered that neither it nor FLS had ever argued the Policy was unsupported by an insurable interest and that all the information and evidence upon which the Estate relied was available to it at summary judgment.

The district court ultimately denied the Estate's motion for reconsideration based on lack of evidence. It found that SPV had never argued the Policy lacked an insurable interest and that all of the testimony from Nancy's family members and an examining doctor showed that Nancy was competent, strong-willed, and knew what she was doing. It further reiterated that New York law, specifically Kramer, controlled and that, even if the Policy was a STOLI, such policies were legal in New York when the Policy was issued. SPV then sought sanctions against the Estate's attorneys, Brian Donahoe and Gerald Kroll, claiming that both attorneys had "unreasonably and vexatiously multiplied the proceedings" in violation of 28 U.S.C. § 1927 and that Attorney Kroll had submitted a forged discovery document in violation of Fed. R. Civ. P 26(g). The district court declined to impose sanctions.

The Estate now appeals the district court's denial of its motion for reconsideration, and SPV cross-appeals the district court's denial of sanctions against the Estate's attorneys. We address each issue in turn.

## II.

The Estate has changed its position numerous times throughout the course of this litigation. At summary judgment, it argued that New Jersey law, rather than New York law, should apply, making the Policy an invalid STOLI. Alternatively, it argued that, under New Jersey law, it should prevail on public policy grounds. However, the Estate has conceded on appeal that New York law applies.

The Estate raised its current arguments for the first time in the district court in connection with its motion for reconsideration, if it raised them at all. We therefore treat its appeal as an appeal from the district court's denial of that motion. A district court has wide discretion over whether to grant a motion for reconsideration of a prior order, In re Charter Commc'ns, Inc., Sec. Litig., 443 F.3d 987, 993 (8th Cir. 2006), and "we will reverse a denial of a motion for reconsideration only for a clear abuse of discretion." Paris Limousine of Okla., LLC v. Exec. Coach Builders, Inc., 867 F.3d 871, 873 (8th Cir. 2017). "An abuse of discretion will only be found if the district court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions." Mathenia v. Delo, 99 F.3d 1476, 1480 (8th Cir. 1996). For the reasons set forth below, we conclude that the district court did not abuse its discretion in denying the Estate's motion for reconsideration.

"The scope of the motion for reconsideration is critical in our determination . . . . A motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." Julianello v. K-V Pharm. Co., 791 F.3d 915, 923 (8th Cir. 2015). Nor may a motion for reconsideration serve to introduce evidence that the movant could have produced before the district court decided the prior motion. Id. at 922; see also Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988) (stating that motions for reconsideration cannot be used to introduce new evidence or legal theories that "could have been adduced during pendency of the summary

-7-

judgment motion" (quoting <u>Rothwell Cotton Co. v. Rosenthal & Co.</u>, 827 F.2d 246, 251 (7th Cir. 1987))). A district court does not abuse its discretion in denying a motion for reconsideration used for such an "impermissible purpose." <u>Julianello</u>, 791 F.3d at 923. This is precisely the situation we find here.

The Estate moved for reconsideration based primarily on a new argument—nefarious coercion—and asserted judicial estoppel for the first time in a supplemental filing.[2] However, in its June 23, 2016 order holding the Estate's motion for reconsideration in abeyance, the district court correctly recognized that the Estate could have raised its nefarious coercion argument in response to SPV's motion for summary judgment, yet it failed to do so. The same can be said for the Estate's judicial estoppel argument, which it had not yet raised when the district court issued the June 23 order. Nevertheless, the district court held the motion for reconsideration in abeyance pending further discovery, giving the Estate an opportunity to uncover and submit new evidence supporting its claims. Instead, the Estate presented an argument to the district court based solely on conjecture and accusations and failed to present new evidence which supported its motion. Because the Estate sought to use its motion for reconsideration for the impermissible purpose of introducing new arguments it could have raised earlier, <u>see</u> <u>Hagerman</u>, 839 F.2d at 414 (stating that a motion for reconsideration should not "serve as the occasion to tender new legal theories for the first time" (quoting <u>Rothwell</u>, 827 F.2d at 251)), and because the

_____

[2]The Estate raises several other arguments for the first time before this Court, contending that Nachman Bergman lacked an insurable interest in his grandmother's life and that the district court should have certified the question of whether an insurable interest existed at procurement of the policy to the New York Court of Appeals. As a general rule, a party may not raise an issue for the first time on appeal. <u>Trs. of Electricians' Salary Deferral Plan v. Wright</u>, 688 F.3d 922, 926 (8th Cir. 2012). We therefore decline to review the district court's decision based on these arguments. We note, however, that, even if the Estate had preserved these arguments, the New York Court of Appeals does not accept certified questions from federal district courts. <u>See</u> N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a).

Estate then failed to support those arguments with any evidence even after receiving additional time for discovery, we cannot say the district court abused its discretion in refusing to reconsider its summary judgment ruling. See Julianello, 791 F.3d at 922-23 (finding no abuse of discretion in the district court's dismissal of plaintiffs' complaint and denial of their motion to reconsider the scope of leave to amend that complaint when all the evidence plaintiffs presented in support of their motion for reconsideration was available to them when they opposed the defendant's motion to dismiss).

## III.

SPV sought sanctions against the Estate's attorneys under 28 U.S.C. § 1927 and Rule 26(g)(3) of the Federal Rules of Civil Procedure. It asserts on appeal that the district court improperly failed to impose these sanctions. We affirm the district court's denial of § 1927 sanctions against both attorneys and its denial of Rule 26 sanctions against Attorney Donahoe, but we reverse the district court's denial of Rule 26 sanctions against Attorney Kroll and remand that issue for further consideration.

"We review the denial of a motion for sanctions for an abuse of discretion, affording the district court substantial deference and finding an abuse of discretion only if the court 'bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence.'" C.H. Robinson Worldwide, Inc. v. Lobrano, 695 F.3d 758, 763 (8th Cir. 2012) (quoting Monarch Fire Prot. Dist. v. Freedom Consulting & Auditing Servs., Inc., 644 F.3d 633, 639 (8th Cir. 2011)).

## A.

28 U.S.C. § 1927 permits courts to impose monetary sanctions on an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." Courts should construe § 1927 strictly and impose sanctions only "when attorney conduct,

viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." Lee v. L.B. Sales, Inc., 177 F.3d 714, 718 (8th Cir. 1999). The district court found that any multiplication of proceedings in this case stemmed not from the attorneys' conduct but from their clients' conduct. SPV fails to argue with any specificity what the Estate's attorneys did to warrant § 1927 sanctions and, thus, cannot establish that the district court based its ruling on an erroneous view of the law or evidence. We therefore find no abuse of discretion in the district court's denial of § 1927 sanctions.

B.

Fed. R. Civ. P. 26(g)(1) requires attorneys and pro se litigants to certify that every disclosure is "complete and correct at the time it was made" and that every discovery request, response, and objection is consistent with the Federal Rules of Civil Procedure, nonfrivolous, not submitted for an improper purpose, and not unreasonable or unduly burdensome. Fed. R. Civ. P. 26(g)(3) imposes "appropriate" sanctions on attorneys or parties who violate Rule 26(g)(1). Such sanctions may include monetary penalties, such as expenses and attorneys' fees, Johnson Int'l Co. v. Jackson Nat. Life Ins. Co., 19 F.3d 431, 438 (8th Cir. 1994), and are particularly appropriate when an attorney submits a forged discovery document. See Perkins v. Gen. Motors Corp., 965 F.2d 597, 600 n.5 (8th Cir. 1992). Unlike § 1927 sanctions, these sanctions are nondiscretionary. Fed. R. Civ. P. 26(g)(3); Perkins, 965 F.2d at 600 n.5; see also Rojas v. Town of Cicero, 775 F.3d 906, 909 (7th Cir. 2015) ("Rule 26(g)(3) gives the judge discretion over the nature of the sanction but not whether to impose one."); Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1372 (11th Cir. 1997) ("The decision whether to impose sanctions under Rule 26(g)(3) is not discretionary.").

SPV's key evidence supporting Rule 26(g) sanctions is an allegedly-forged discovery document and the associated metadata produced by Attorney Kroll. SPV presents no evidence that Attorney Donahoe participated in this violation of Rule

-10-

26(g)(1).  We therefore decline to find that the district court abused its discretion in denying Rule 26(g) sanctions against Attorney Donahoe.

In response to a discovery request, Attorney Kroll provided SPV with a redacted copy of the retainer agreement between himself and the Estate's personal representative.  After filing a motion to compel production in a related proceeding against Attorney Kroll in the United States District Court for the Central District of California, SPV obtained an unredacted draft of the same retainer agreement.  This draft showed Attorney Kroll would receive a contingency fee if either the Estate or the Trust prevailed in obtaining the death benefits payable under the Policy, supporting SPV's theory that the Estate and Trust were controlled by the same parties in interest.  When SPV produced the unredacted draft to the district court, the Estate claimed that draft was not a correct copy and produced its own unredacted copy of the retainer agreement.  The Estate's copy omitted the provision awarding Attorney Kroll a contingency fee if the Trust prevailed.

SPV requested Rule 26(g)(3) sanctions based on document metadata, taken directly from Attorney Kroll's computer by his e-discovery vendor.  The metadata showed that the retainer agreement produced by the Estate, while purportedly signed by the Estate's personal representative in August 2015, was not created until July 20, 2016—two days before Attorney Kroll produced the document to the court.  Therefore, SPV argued, the document was forged.  The district court acknowledged that fabricating discovery documents is grounds for sanctions, see SPV-LS, LLC v. Transamerica Life Ins. Co., No. CIV 14-4092, 2017 WL 3668765, at *3 (Aug. 23, 2017), but it denied sanctions against Attorney Kroll.  It did so under the mistaken belief that SPV relied on a document examiner's report to prove forgery, stating that SPV should have produced that report.  However, SPV never claimed that it relied on a document examiner's report; in fact, it indicated that it never consulted a document examiner and relied solely on the document's metadata.  Because the district court based its denial of sanctions on SPV's failure to introduce a nonexistent report into

-11-

evidence, it clearly conducted an erroneous assessment of the evidence. See, e.g., MDU Res. Grp. v. W.R. Grace & Co., 14 F.3d 1274, 1280 (8th Cir. 1994) (finding the district court clearly conducted an erroneous assessment of evidence when it misunderstood the purpose for which the evidence was offered).  It therefore abused its discretion in denying Rule 26(g) sanctions against Attorney Kroll on this basis.

IV.

The district court's denial of the Estate's motion for reconsideration is affirmed. Its denial of § 1927 sanctions against Attorneys Donahoe and Kroll and its denial of Rule 26(g) sanctions against Attorney Donahoe are likewise affirmed.   The district court's denial of Rule 26(g) sanctions against Attorney Kroll is reversed.  The matter is remanded to the district court for further proceedings on the motion for Rule 26(g) sanctions against Attorney Kroll consistent with this opinion.

_____