# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-2853

_____

Daniel'la Deering

*Plaintiff - Appellant*

v.

Lockheed Martin, a Maryland Corporation

*Defendant - Appellee*

Maryanne Lavan, an individual; Kenneth Bastian, an individual

*Defendant*s

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 7, 2024
Filed: September 17, 2024

_____

Before COLLOTON, Chief Judge, SHEPHERD and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

The district court decided that the appropriate sanction for a plaintiff who lied in a deposition and withheld information was dismissal. We affirm.

I.

After Lockheed Martin fired Daniel'la Deering, one of its in-house lawyers, she sued for discrimination and retaliation. Summary judgment marked the end of the road for her discrimination claim, but her retaliation claim would have gone to a jury if she had not spent more than a year and a half misleading Lockheed and the district court[1] about her employment.

The deception began at her deposition, when she claimed to be "currently employed" by a company called nVent. As Lockheed would later learn, she had already accepted a job elsewhere that paid significantly more money. Yet when Lockheed's counsel specifically asked about her job hunt, she replied that it was "exhausting and disheartening to keep applying for jobs and not get[] anything," so she had not "looked for any alternative employment while . . . working for nVent." Despite signing an errata sheet afterward, she made no attempt to correct the inaccuracy.

Instead, she doubled down on the deception. Several months after the deposition, long after she had started working at the other company, she submitted a declaration, along with a copy of her résumé, to the district court. The first item listed was "Associate General Counsel, Director" at nVent, a role she had purportedly held from February 2021 to the "*present*." (Emphasis added). Then, in two confidential settlement letters, she "reference[d] *nVent* as [her] current employer and use[d] her salary and benefits [there] as a basis for her damages calculation." (Emphasis added). No mention of any other employer.

Lockheed only discovered the deception in the weeks leading up to trial. A disclosure listed her "[a]ctual [i]ncome" for the previous year as $260,866, but tucked within her trial exhibits were two documents telling a different story. One

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

was a W-2 showing that she had made nearly twice as much, $452,214, working elsewhere. The other was a signed employment agreement with her new employer.

With Deering's W-2 and signed employment agreement in hand, Lockheed filed an emergency motion for sanctions. Following a hearing, the district court opted to dismiss Deering's case with prejudice. Characterizing her deceit as "intentional, willful, and in bad faith," the court thought that any other sanction "would provide no more than a slap on the wrist." It then went on to award Lockheed $93,193 in attorney fees.

## II.

Courts have long recognized that dismissal is available as a sanction for "willfulness [or] bad[-]faith" conduct in litigation. *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212 (1958). Here, the district court found that Deering's misconduct reached that level before concluding that "a lighter sanction simply [would] not suffice." The question is whether it abused its discretion in doing so. *See Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 898–99 (8th Cir. 2009) (applying abuse-of-discretion review but noting that "discretion narrows as the severity of the sanction . . . increases" (citation omitted)).

There were multiple factors that drove the decision to dismiss. One was the sheer length of Deering's deception, which lasted more than a year and a half. Despite multiple opportunities to tell the truth, she repeatedly chose to lie "under oath." It began with her deposition, *see Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694–96 (8th Cir. 2001) (affirming a dismissal sanction for lying during a deposition), and continued all the way to the eve of trial, *see Chrysler Corp. v. Carey*, 186 F.3d 1016, 1021 (8th Cir. 1999) (explaining that "deny[ing] and conceal[ing] evidence . . . seriously threaten[s] the integrity of . . . the judicial process").

-3-

As a lawyer, Deering should have known better. She would have been aware, for example, that continuing to claim a lower salary would have increased her potential recovery at trial. The less she earned, the greater the lost wages she could recover. *See, e.g.*, *Wallace v. DTG Operations, Inc.*, 563 F.3d 357, 361 (8th Cir. 2009) (affirming a damages award that included "lost wages and benefits").

Deering's position is that she is blame free because her lawyers allegedly "advised her" to lie about her new job during her deposition and then "mistakenly failed" to produce updated employment documents in discovery. She claims that, once she found out about the problem, she "demanded" that they "correct" it.

Although the district court found that her attorneys *also* committed misconduct by signing letters containing false employment and salary information, it made clear that the dismissal was for *her* bad-faith conduct, not theirs. She was the one, after all, who took an oath to tell the truth during her deposition, which made *her* deception, "in light of her legal education and experience, extremely troubling." Not to mention that parties in a civil case are "bound by the acts of [their] lawyer-agent[s]." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 397 (1993) (citation omitted). So even if her attorneys played a role in convincing her to lie, her only "recourse" is pursuing an action against them, not asking us to forgive her misconduct in this case. *Inman v. Am. Home Furniture Placement, Inc.*, 120 F.3d 117, 118–19 (8th Cir. 1997) (discussing a potential malpractice action).

Once the "facts show[ed] willfulness and bad faith," as the district court found, there was no need for it to "investigate the propriety of a less extreme sanction." *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817–18 (8th Cir. 2001). Yet it did so anyway and concluded that anything less than dismissal "would provide no more than a slap on the wrist" given "the gravity," duration, and nature of the misconduct. The bottom line is that dismissal with prejudice was a

"sanction . . . [falling] within the court's discretion."[2]  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *United States v. Hudson*, 11 U.S. 32, 34 (1812) ("Certain implied powers must necessarily result to our Courts of justice from the nature of their institution.").

III.

The district court made two other discretionary decisions.  One was denying Deering's motion for a continuance before the hearing on Lockheed's emergency motion for sanctions.  The other was denying her motion for reconsideration after dismissing the case.  Neither was an abuse of discretion.  *See SPV-LS, LLC v. Transamerica Life Ins. Co.*, 912 F.3d 1106, 1111 (8th Cir. 2019) (denial of a motion for reconsideration); *Farmers Co-op Co. v. Senske & Son Transfer Co.*, 572 F.3d 492, 499 (8th Cir. 2009) (denial of a continuance).

A.

There is no doubt that Deering was in a tough spot once Lockheed discovered the deception.  She wanted a continuance to "replace conflicted counsel" and deal with the allegations of perjury, but she waited until the day before the hearing to ask for one despite receiving notice weeks earlier.  *See United States v. Pruett*, 788 F.2d 1395, 1396 (8th Cir. 1986) (listing "the diligence of the [requesting] party" as a

---

[2]The district court was clear that it was dismissing "[t]he *case* . . . with prejudice," not just her still-pending retaliation claim.  (Emphasis added).  In these circumstances, there is no reason to address the now-hypothetical question of whether her discrimination claim should have survived summary judgment.  Even if the answer is yes, entertaining the argument at this point would be of no benefit to her and risks thwarting the sanctions order.  *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("Federal courts may not decide questions that cannot affect the rights of litigants in the case before them . . . ." (citation omitted)); *cf. DuBose v. Minnesota*, 893 F.2d 169, 171 (8th Cir. 1990) ("[D]ismissal for failure to prosecute bars review of earlier entered interlocutory rulings."); *Marquez v. Silver*, 96 F.4th 579, 583 (2d Cir. 2024) (extending this rule to sanctions).

relevant factor). She also never explained why her non-conflicted lawyer at the time, someone she had hired after the misconduct occurred, could not argue on her behalf. Her motion for a continuance, as the district court put it, was both "inappropriate and out of time."

## B.

Her motion for reconsideration had similar flaws.[3] Although it contained a declaration describing how her lawyers had failed her, she could have submitted the document weeks earlier, "before the district court decided" to impose sanctions. *SPV-LS, LLC*, 912 F.3d at 1111; *see Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010) (explaining that motions for reconsideration are for "present[ing] newly discovered evidence"). Plus, even if she had, it would not have "undermine[d] or in any way alter[ed] . . . the [sanctions] order," which had found that *she* also personally committed misconduct. Whether untimely or immaterial, denying it was not an abuse of discretion.

## IV.

Her notice of appeal, on the other hand, came too early to "encompass[]" the fee award. Fed. R. App. P. 3(c)(4). She filed it on August 14, 2023, before the district court had decided whether to grant attorney fees. On August 29, two things happened. First, the court decided that it *would* award attorney fees to Lockheed. And second, Deering filed her statement of issues with us, which identified whether the "district court further err[ed] in also granting [Lockheed's] motion for attorney's fees" as one of her "issues on appeal." It then took the court more than a month,

---

[3]A recent rule change makes clear that a judgment "encompasses" all the other orders that "merge[d] into [it]," making it "[un]necessary to designate" each one separately in a notice of appeal. Fed. R. App. P. 3(c)(4). One of the orders that "merge[d]" was the one denying reconsideration. *Id.*; *see also Banister v. Davis*, 590 U.S. 504, 508, 518–21 (2020); *Nordgren v. Hennepin County*, 96 F.4th 1072, 1077 (8th Cir. 2024).

until October 2, to set the amount of the award at $93,193. The question for us is whether the August 14 notice of appeal or August 29 statement of issues gave us jurisdiction over the October 2 award.

The answer is no. One problem is that the notice of appeal was filed before the district court entertained the request for attorney fees, much less decided whether and how much to award. *Obin v. Dist. No. 9 of Int'l Ass'n of Machinists & Aerospace Workers*, 651 F.2d 574, 584 (8th Cir. 1981) (characterizing attorney fees as "collateral" to the rest of the case and "separably appealable"); *see also Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps.*, 571 U.S. 177, 186 (2014) (holding that a claim for attorney fees is independently appealable from the underlying case). The other problem is related to the first: the notice of appeal predictably did not mention the appeal of an issue that had yet to be decided. *See* Fed. R. App. P. 3(c)(1)(B).

The August 29 statement of issues presents a closer call. It at least mentions the attorney-fee issue that Deering is trying to appeal. But the problem, once again, is timing. Even though a filing like this one can substitute for a notice of appeal, *see Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 458 (8th Cir. 2016), the attorney-fee award had not yet become appealable. *See Gates v. Cent. States Teamsters Pension Fund*, 788 F.2d 1341, 1343 (8th Cir. 1986). As the Seventh Circuit has explained, "allow[ing] an appeal before quantification would set the stage for multiple appeals from a single award: one appeal contesting the declaration of liability and another contesting the amount." *Cooke v. Jackson Nat'l Life Ins. Co.*, 882 F.3d 630, 632 (7th Cir. 2018).

The award in this case did not become final until the district court "quantifi[ed]" it a month later, *id.*, meaning Deering's appeal was still premature even if we construe her statement of issues as a notice of appeal. *See Riley v. Kennedy*, 553 U.S. 406, 419 (2008) ("We have long held that an order resolving liability without addressing a plaintiff's request for relief is not final."). She needed to wait at least until October 2, the day the court "announce[d]" its decision, to file

a separate or amended notice of appeal if she wanted us to review the attorney-fee award. Fed. R. App. P. 4(a)(2); *see Gates*, 788 F.2d at 1343; *see also Shaw v. Merritt-Chapman & Scott Corp.*, 554 F.2d 786, 789 (6th Cir. 1977); *Weilgos v. Commonwealth Edison Co.*, 892 F.2d 509, 511–12 (7th Cir. 1989); *Hunt v. City of Los Angeles*, 638 F.3d 703, 719 (9th Cir. 2011); *EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1249–50 (10th Cir. 1999); *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 838 (11th Cir. 1998).

V.

We accordingly dismiss the appeal in part, deny the motion to supplement the record, and affirm the judgment of the district court.

_____